**Edmond H. MASRI, Plaintiff,**

v.

**Gray WAKEFIELD, et al., Defendants.**

**Charles RUBENSTEIN, Plaintiff,**

v.

**Gray WAKEFIELD, et al., Defendants.**

**Civ. A. Nos. 82–JM–862, 82–JM–863.**

United States District Court,
D. Colorado.

Sept. 24, 1984.

Sheldon E. Friedman, Isaacson, Rosenbau, Spiegleman & Friedman, P.C., Denver, Colo., Seymour Kurland, Ian. A.L. Strogatz, M. Norman Goldberger, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Barry J. Pinkowitz, New York City, Richard D. Greenfield, Nicholas E. Chimicles, Carole A. Broderick, Greenfield, Chimicles & Lewis, Haverford, Pa., William Jarblum, James D. Fornari, Jarblum & Solomon, P.C., New York City, for plaintiffs.

Richard L. Schrepferman, Charles J. Kall, Holme Roberts & Owen, Denver, Colo., John C. Snodgrass, Donald T. Hedges, Jr., Vinson & Elkins, Houston, Tex., Michael W. Mitchell, Deborah Lin Smith, Skadden, Arps, Slate, Meagher & Flom, New York City, George B. Curtis, Gibson, Dunn & Crutcher, Denver, Colo., Paul C. Saunders, Cravath, Swaine & Moore, New York City, Harry L. Hobson, William J. Baum, Jr., Holland & Hart, Denver, Colo., Dennis J. Block, H. Adam Prussin, Weil, Botshal & Manges, New York City, Donald McKinlay, Mayer, Brown & Platt, Denver, Colo., C. Michael Buxton, Charles D. Tetrault, Vinson & Elkins, Washington, D.C., for defendants.

## ORDER

JOHN P. MOORE, District Judge.

THIS MATTER is before me on plaintiffs' motion for class action certification. The motion has been fully briefed and argued and is now ripe for determination. Jurisdiction over the federal securities claims that comprise this consolidated action lies pursuant to section 22 of the Securities Act of 1933, as amended, 15 U.S.C. § 77v and section 27 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78aa.

The amended consolidated complaint focuses on a June 1981 prospectus provided by defendant Ensource which allegedly failed to fairly and adequately disclose facts material to the exchange transaction it describes. Plaintiffs allege claims under sections 11, 12, and 15 of the Securities Act of 1933 and sections 10(b), 14(a), and 20 of the Securities Exchange Act of 1923, and SEC rule 10b–5 promulgated thereunder. The prospectus describes an exchange offer, by which shares of common stock of defendant Ensource were to be exchanged for interests in oil and gas partnerships and working interests in certain oil and gas properties. In addition, Ensource planned to merge with two corporations engaged in oil and gas exploration and also negotiated two acreage transactions whereby certain undrilled acreage was exchanged for common stock of Ensource. The prospectus sets forth the formula for the exchange offer: one share of Ensource common stock for each $20.00 of "exchange value" assigned to the partnership interests, property interests, and shares of the merging corporations' stock. The exchange value was determined, in part, on the basis of the present value (at a 10% discount) of the estimated future net revenues of the proved oil and gas reserves attributable to the partnership interests, corporation shares, and property interests to be exchanged, and on the estimated quantities of hydrocarbons not classified as proved reserves. Estimates of proved reserves attributable to the various interests and shares were a product of factual data provided by, and warranted by, the partnership interests, owners of the property interests, and the merging corporations.

Although the prospectus states that the $20.00 figure was arbitrarily chosen, plaintiffs allege that defendants knowingly or recklessly presented the prospectus in a misleading manner so as to give the impression that each share of Ensource common stock had a fair market value of $20.00, excluding dilution factors. In other words, plaintiffs allege that the prospectus represented that the value of the oil and gas properties to be exchanged for the Ensource stock and the value of the shares of Ensource common stock to be given were equivalent. Other alleged material misrepresentations and omissions concern the overvaluation of the properties to be acquired in the exchange offer, the fees paid in the exchange offer, and the relationships of various insiders to the exchange offer and to one another.

The motion seeks certification of two plaintiff classes: the MASRI class, composed of persons who exchanged property interests for common stock of Ensource pursuant to the exchange offer made by Ensource in the prospectus; and the RUBENSTEIN class, composed of persons who purchased the common stock of Ensource during the period between August 1, 1981, to and including March 20, 1982. At issue is whether certification of these two classes is appropriate under Fed.R. Civ.P. 23 within the factual context presented by this consolidated action.

### Standard for Class Certification

In order for an action to be maintained as a class action, plaintiff must establish that the four requirements of Fed.R.Civ.P. 23(a) are satisfied and that the case fits within one of the three subcatagories of 23(b). The requirements of Rule 23(a) are:

(1) the class is so numerous that joinder of all members in impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,

and (4) the representative parties will fairly and adequately protect the interests of the class.

The Rule 23(a) analysis is followed by consideration under Rule 23(b)(3) of whether the questions of law or fact common to the class predominate over any questions affecting only individual members, and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The burden of establishing that the requirements of Rule 23 have been satisfied are upon the party requesting a class certification. *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459 (10th Cir.1974); *Rossin v. Southern Union Gas Co.*, 472 F.2d 707 (10th Cir.1973).

The requirements of Rule 23 are of constitutional magnitude and were designed to accomplish two ends. They serve both the interest of the putative class members in having their claims vigorously litigated by the class representative and the defendant's interest in finality. *Hansberry v. Lee*, 311 U.S. 32, 44–45, 61 S.Ct. 115, 119–20, 85 L.Ed. 22 (1940); *Gonzales v. Cassidy*, 474 F.2d 67, 74 (5th Cir.1973). Accordingly, while recognizing that the Court of Appeals for the Tenth Circuit has encouraged certification,[1] I am nonetheless obliged to satisfy myself after "rigorous analysis" that the requirements of Rule 23 have in fact been met before certification is appropriate. *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

With this background, I will examine the claims of each of the plaintiff's in turn.

### Rubenstein Class

■ Plaintiff Rubenstein seeks to be recognized as the class representative for all those individuals who purchased Ensource common stock for the period between August 1, 1981 (the date of issuance) and March 20, 1982 (the date a report was filed devaluing the reserves as stated in the prospectus). Mr. Rubenstein testified in his deposition that he had never seen nor reviewed the prospectus put in issue by the complaint. Rubenstein argues this fact does not operate to make him an inadequate representative for the class of investors who purchased common stock in Ensource during the relevant period. This is so, he argues, because the section 11 claim does not contain a reliance element and because the section 10(b) claim can be pursued under a fraud on the market theory, negating the need to prove reliance on the prospectus itself. Defendants respond that the fraud on the market theory adopted by the Tenth Circuit does not extend to cover the facts presented by the instant case. Defendants additionally urge that Rubenstein is not a proper class representative because, as a sophisticated investor who bought Ensource stock for speculative purposes, he is subject to defenses to which other members of the class may not be subject.

Without reaching the merits of the section 10b claims pressed by plaintiff Rubenstein,[2] it appears that the fraud on the market theory as adopted by the Tenth Circuit is of questionable applicability to the claim in the factual context in which it arises. In *T.J. Raney & Sons v. Fort Cobb, Oklahoma Irrigation Fuel Authority*, 717 F.2d 1330 (10th Cir.1983), *cert. denied sub nom. Linde, Thomson, Fairchild, Langworthy, Kohen & Van Dyke v. T.J. Raney & Sons, Inc.*, —— U.S. ——, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984), the court adopted the fraud on the market theory articulated in *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). With respect to newly issued securities, the court stated the theory reaches

---

1. *See Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969), in which the court of appeals stated "if there is an error made, let it be in favor and not against maintenance of the class action ..." *Id.* at 99.

2. A plaintiff's burden of satisfying the prerequisites of rule 23 does not involve convincing demonstration of the merits of his underlying cause of action. *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 345 (10th Cir.1973).

only "to those cases in which the securities were not qualified legally to be issued and as the act states, there was a scheme to defraud or act to defraud." *Id.* at 1333.[3] In the case before me, plaintiff Rubenstein has not alleged that the stock was illegally issued; the contentions center on a prospectus which is claimed to contain material omissions and misrepresentations. Accordingly, the interest of putative class members who could prove direct reliance on the prospectus might not be adequately represented by Mr. Rubenstein, who must rely on a different legal theory of questionable applicability to support his 10(b) claim. Plaintiff Rubenstein's argument that individual issues of reliance should not defeat class certification is unavailing in this context, where the question is one of kind, not of degree.

Further, in deposition, Mr. Rubenstein testified that his decision to purchase Ensource stock was based on a friend's recommendation and, after following the stock for several months, his own sense that the price had "bottomed out." Rubenstein determined to buy, but to "take his loss and run" should the stock continue to decline. This unique investment strategy may have the effect of subjecting Rubenstein to defenses to which other members of the class he seeks to represent would not be vulnerable. *J.H. Cohn & Co. v. American Appraisal Assoc., Inc.*, 628 F.2d 994 (7th Cir. 1980). The presence of a defense peculiar to the representative has implications for both the adequacy and typicality requirements. *J.H. Cohn, supra; Koos v. First National Bank of Peoria*, 496 F.2d 1162 (7th Cir.1974). There is concern that the representation of the class will suffer as the representative becomes distracted by the presence of possible defenses applicable only to him. *Koos, supra; Cohen v. Laiti*, 98 F.R.D. 581, 583–84 (E.D.N.Y. 1983); *Kline v. Wolf*, 88 F.R.D. 696, 699 (S.D.N.Y.1981); *Garonzik v. Shearson Hayden Stone, Inc.*, 574 F.2d 1220 (5th Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 39 (1979).

In light of these considerations, it is my conclusion Rubenstein's claims and defenses are not typical of those of the class he seeks to represent and that because of the divergence, Rubenstein is not an adequate representative for the class asserted. I will accordingly deny the motion for class certification and direct that plaintiff Rubenstein proceed upon the allegations in the consolidated amended complaint as an individual.

*Masri Class*

■ Masri seeks to represent the class of exchange offerees. Members of that class provided factual data to be used in estimating the proved reserves for purposes of establishing, along with other calculations, the exchange value. The estimates were made by independent consultants and were warranted as complete and accurate by the partnerships, other interests, and merging corporations. On this basis, a table was included in the final supplement to the prospectus which reflected proved reserves and estimated future net revenues. Subsequently, the Ensource Annual Report, issued March 20, 1982, reported a 14% write-down of the value of Ensource's proved reserves and estimated future net revenues at July 31, 1981. As a result of this write-down, the reserve estimates of 119 of the merging interests were adjusted downward ("the devalued interests"), and the estimates of 45 of the merging interests were adjusted upward. Plaintiff Masri cites this write-down as a fact in evidence of his claim that the prospectus sent to exchange offerees was misleading or omitted material facts.

The class which Masri seeks to represent includes both the former partners and owners of interests which were not subsequently devalued and those partners and owners of interests which were subsequently devalued. Since the number of shares of Ensource stock assigned to each interest was made on a relative basis, if the reserves of

---

**3.** This reading of *Shores* as it applies to newly issued securities was also adopted by the Eleventh Circuit Court of Appeals in *Lipton v. Documation, Inc.*, 734 F.2d 740 (11th Cir.1984).

the devalued interests were overstated, those interests would have received more for their fair relative share of Ensource stock, and the other interests would have received correspondingly less. Accordingly, it is patent the interests of the members of the class are potentially adverse in this respect, even if they are common in other respects.

It is the contention of defendants that because one of the major misstatements in the prospectus alleged by plaintiff is that the reserve estimates were overstated, the interests of the potential class members are fatally in conflict. Plaintiff Masri responds to this argument by asserting the complaint does not allege the prospectus overstated reserves, but, rather, that the prospectus was misleading in not sufficiently articulating the risk of overstatement in calculating the reserve values.

I find plaintiff's response more than a little disingenuous. My own review of the consolidated amended complain the consolidated amended complaint indicates that one thrust of the complaint is the assertion that the prospectus overstated the reserve estimates, evidenced by the fact that those estimates had to be written down a short time later. As a result, I must address the conflict issue raised by defendants.

It is clear that where "divergent views, divergent facts, and divergent interests" create a serious potential for conflict among the members of the putative class, there is a threshold question of whether the proposed class is one in fact. *Newberry v. Washington Post Co.*, 71 F.R.D. 25, 26 (D.D.C.1976). Further, it is "axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to or in conflict with, the persons he would seek to represent." *Albertson's, supra* at 463; *Hansberry v. Lee, supra.*

Accordingly, the fact that the class proposed contains, in Masri's own characterization, both "good guys" and "bad guys," [4] raises serious Rule 23 concerns, as well as the more fundamental question of whether there is in fact a "class" of exchange offerees with interests similar enough for Masri to undertake to represent. Initially, the facts of this case create a situation where there is a potential for one-third of the proposed class to have a cross-claim against the remaining two-thirds of the class for overstatement of reserves. Additionally, there are potential counterclaims by the defendants for breach of warranty and possibly for violations of federal securities laws against those class members who warranted the reserves of the devalued interests. As a result, it is possible that a recovery of damages by plaintiff Masri on his claims that reserve estimates were overstated would ultimately be borne by those liable for the overstatement; individuals who are themselves members of Masri's proposed class.

Further complications arise from the fact that different standards and unique defenses would apply to class members who knowingly overstated their reserves. Such knowledge is an absolute defense to any purported claim under section 11(a) [5] and 12(2) [6] of the Securities Act of 1933, and it gives rise to the defense of non-reliance which may be interposed as to any claim under section 10(b) of the Exchange Act.[7] Finally, the relief of rescission requested by plaintiff Masri (consolidated amended complaint at ¶ 41) may not be to the advantage of those class members who overstated reserves and, as a consequence, were overcompensated for the interests they exchanged.

There is no question that the issue of defendants' liability, if any, and the issue of whether the prospectus in fact contained

---

4. Deposition of Edmond H. Masri, July 10, 1984, at 139.

5. *See Martin v. Hull*, 92 F.2d 208, 210 (D.C.Cir.), *cert. denied*, 302 U.S. 726, 58 S.Ct. 47, 82 L.Ed. 561 (1937).

6. *See Hill York Corporation v. American International Franchises, Inc.*, 448 F.2d 680, 695 (5th Cir.1971).

7. *See Holdsworth v. Strong*, 545 F.2d 687, 694–95 (10th Cir.1976), *cert. denied*, 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 805 (1977).

false or misleading statements are common to all the putative members of the class. However, there is also no question that the interests of class members with devalued interests and those with interests that were not devalued are concretely adverse, raising the spectre of conflict and creating the necessity for the determination of countless unique factual issues. In sum, the actual adversity of interests between class members raises a myriad of subsidiary issues which make this case unmanageable as a class action and leads me to conclude that despite the obvious common elements between class members, the potential for conflict among them makes the maintenance of a class action both impractical and inappropriate.

Upon the foregoing, it is

ORDERED the motion for class certification is denied. Plaintiffs Masri and Rubenstein shall proceed to litigate the claims raised in the consolidated amended complaint as individuals.