William **KAPLAN**, Personal Representative of the Estate of Lois Kaplan, on behalf of himself and all others similarly situated, Plaintiff,

v.

Marvin A. **POMERANTZ**, Warren J. Hayford, Daniel P. Casey, Vernon E. Faulconer, David B. Hawkins, John Hawkinson, Thomas R. Hutchinson, Richard S. Levitt, Gaylord Container Corporation, Salomon Brothers Inc., and Goldman, Sachs & Co., Defendants.

No. 89 C 7033.

United States District Court,
N.D. Illinois, E.D.

May 22, 1990.

Michael J. Freed, Kenneth Wexler, Much, Shelist Freed, Denenberg Ament & Eiger, Chicago, Ill., Leonard Barrack, Gerald J. Rodos, Samuel R. Simon, Barrack, Rodos & Bacine, Philadelphia, Pa., for plaintiff.

Garrett B. Johnson, Mark E. Ferguson, Kirkland & Ellis, Chicago, Ill., for Marvin A. Pomerantz, Warren J. Hayford, Daniel P. Casey, Vernon E. Faulconer, David B. Hawkins, John Hawkinson, Thomas R. Hutchinson, Richard S. Levitt, Gaylord Container Corp.

Bernard J. Nussbaum, Robert B. Millner, Steven M. Levy, Christopher Q. King, Sonnenschine Nath & Rosenthal, Chicago, Ill., for Solomon Bros. Inc. and Goldman, Sachs & Co.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This securities fraud lawsuit was brought on behalf of the purchaser of certain securities by her husband, who is also the administrator of her estate. Pending is plaintiff's motion for certification of the case as a class action pursuant to Fed.R. Civ.P. 23. For the reasons stated below, plaintiff's motion is granted in part and denied in part.

### II. FACTS

For purposes of this motion, the Court accepts as true the factual allegations in the complaint concerning the merits of the case. Plaintiff's wife, Lois Kaplan, bought 50 shares of stock in Gaylord Container Corporation ("Gaylord") on July 15, 1988. Defendants are Gaylord, certain of Gaylord's officers and directors ("the Individual Defendants"), and Salomon Brothers, Inc. and Goldman, Sachs & Co. ("the Underwriters"). Gaylord had gone public on July 7, 1988, with the sale by Gaylord and certain shareholders of 3,800,000 shares of Class A common stock in a public offering at $20.50 per share.

Prior to the public offering, Gaylord had filed with the Securities and Exchange Commission a Registration Statement and Prospectus (collectively, "the Offering Materials"). On July 7, 1988, the SEC declared the Registration Statement effective. According to plaintiff, the Offering Materials made a number of false and misleading statements and omissions, the exact nature of which are not important for purposes of the pending motion. These false and misleading statements and omissions were perpetuated in documents publicly disseminated by Gaylord in the period following the public offering. Those doc-

uments include an Initial Shareholders' Report issued in August, 1988; Reports on Form 10Q filed with the SEC in August, 1988, February, 1989, and April, 1989; a Report on Form 10K filed in December, 1988; and an Annual Report to Shareholders issued in January, 1989. Because of the false and misleading statements and omissions, Gaylord stock sold for over $20 per share through April, 1989. After the revelation of adverse facts concerning Gaylord, the stock price fell dramatically.

In Count I of the complaint, plaintiff contends that defendants are liable pursuant to Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, for false and misleading statements contained in the Offering Materials. In Count II, plaintiff claims that defendants are liable pursuant to Sections 10(b) and 20 of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b–5 promulgated thereunder, with respect to the Offering Materials and/or the subsequent documents. In Count III, plaintiff contends that defendants are liable pursuant to Section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2), for their sales of securities pursuant to the false and misleading Offering Materials.

Plaintiff seeks the certification of a class consisting of all persons who purchased Gaylord Class A common stock between June 29, 1988 and April 25, 1989, excluding the following: all defendants in this case, all selling shareholders in the June 29, 1988 public offering ("Selling Shareholders"), members of the immediate family of each of the Individual Defendants and Selling Shareholders, any entity in which any of the defendants or Selling Shareholders has a controlling interest, and the legal representatives, heirs, successors, and assigns of any of the defendants or Selling Shareholders.

### III. ANALYSIS

#### A. Introduction

Plaintiffs seek certification of the class pursuant to Rule 23(b)(3). Accordingly, plaintiffs bear the burden of showing that the following six requirements are satis-

fied: (1) "the class is so numerous that joinder of all members is impracticable" (Rule 23(a)(1)); (2) "there are questions of law or fact common to the class" (Rule 23(a)(2)); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (Rule 23(a)(3)); (4) "the representative parties will fairly and adequately protect the interests of the class" (Rule 23(a)(4); (5) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" (Rule 23(b)(3)); and (6) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (Rule 23(b)(3)).

Defendants have not challenged plaintiff's assertions that the first, second, fifth and sixth requirements are satisfied, and the Court finds that those requirements are met. Defendants do, however, raise several issues which relate to typicality and adequacy of representation.

*B. Investigation of the Claims*

■ First, defendants argue that plaintiff is not an adequate class representative because he failed to investigate his claims against defendants. The Court initially notes that the adequacy of a class representative "depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Although defendants' first argument does not fall neatly under either of these two factors, defendants rely on various cases in which a plaintiff has been held to be an inadequate class representative for his or his counsel's failure to be sufficiently familiar with the case. *See Levine v. Berg*, 79 F.R.D. 95, 98 (S.D.N.Y.1978); *Rogosin v. Steadman*, 65 F.R.D. 365, 367 (S.D.N.Y.1974), *supp'd*, 71 F.R.D. 514 (S.D. N.Y.1976); *Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730, 734 n. 2 (S.D.N.Y. 1979); *Rand v. Monsanto Co.*, No. 85 C 9087, 1989 WL 27458 (N.D.Ill. March 23, 1989).

Defendants point to plaintiff's testimony at his deposition as establishing the inadequacy of his investigation of this case. Plaintiff stated that he had not taken any steps to familiarize himself as to any matter pertaining to Gaylord. (Dep. 166.) He had never read the prospectus. (Dep. 341.) He did not make a personal investigation into the conditions of Gaylord's plants. (Dep. 138.) He does not have personal knowledge that the price of Gaylord's stock was overstated or that Gaylord's prospectus contained false statements. (Dep. 141, 163.) He testified repeatedly that he left the investigation up to his lawyers, but he did not ask his lawyers what their investigation involved. (Dep. 199.)

Plaintiff responds that his knowledge of the case is sufficient and that the plaintiff need not personally conduct a thorough investigation of the facts in order to qualify as a class representative. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (reversing dismissal of derivative action even though plaintiff had little knowledge of the nature of the suit or the underlying facts); *Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir.) (personal familiarity with facts not required to show adequacy of representative in derivative case), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

A plaintiff whose knowledge of the lawsuit is so wanting that he appears to be no more than a pawn of attorneys who seek a large fee award may be an inadequate class representative. *Cf. Greene v. Brown*, 451 F.Supp. 1266, 1276 (E.D.Va. 1978) (Rule 23 "is not intended to substitute the lawyer for the client and turn an individual's suit for vindication of his personal rights into a lawyer's suit for vindication of the rights of a class"). This, however, is not such a case. Plaintiff testified to his understanding of the basic allegations of the complaint. (Dep. 137, 140, 145, 152, 163, 329). Plaintiff also stated that he had reviewed the complaint before it was filed. (Dep. 211.) Although his understanding may be rudimentary at times, a layman cannot be expected to explain in

detail all of the intricacies of a complex securities fraud lawsuit.

As long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon his lawyers' advice, there is no reason that he may not delegate further factual and legal investigation to his attorneys. The cases offered by defendants do not hold to the contrary. In *Levine,* the plaintiff did not have even a basic understanding of the nature of the claim. 79 F.R.D. at 98. In *Rogosin,* 65 F.R.D. at 367, and *Sicinski,* 82 F.R.D. at 734 n. 2, the courts were concerned that some investigation of the claim be performed but allowed for performance of this investigation by the attorneys rather than the named plaintiff. In *Rand,* the court found that despite the plaintiff's ignorance with respect to certain facts, his basic familiarity with the case was sufficient.

This Court is in general agreement with *Hernandez v. United Fire Ins. Co.,* 79 F.R.D. 419, 426–28 (N.D.Ill.1978), in which Judge Bua expressed skepticism about any universal requirement that the named plaintiff in a class action must demonstrate familiarity with the underlying facts. The class action procedure exists, in part, for the benefit of plaintiffs with small claims who could not otherwise vindicate their rights. Adoption of defendants' position would convert the class action into a device usable only by individuals with such a degree of sophistication that they would be capable of acting as their own attorneys.

The Court is also hesitant to allow defendants to use the issue of a plaintiff's knowledge of the case as a tool for delving into a plaintiff's relationship with his attorneys and exploring the attorneys' work product in the preliminary stages of a class action. Defendants in this case complain that plaintiff's attorneys have failed to disclose the extent of their investigation into the claims raised in the complaint. The detail in the complaint itself should be sufficient to answer that question at this stage. If defendants have concerns cognizable under Fed.R.Civ.P. 11, those concerns would more properly be brought to the Court after plaintiff's claims were shown to be false and defendants had a reasonable, independent basis for believing that plaintiff and his attorneys had filed the lawsuit without conducting a reasonable inquiry.

### C. Responsibility for the Litigation

Defendants next argue that plaintiff has refused to accept responsibility for the conduct of the litigation. This argument is based on plaintiff's alleged inability to act as a fiduciary for his wife's estate, as evidenced by his failure to open the estate's mail (dep. 67–68) and his lack of knowledge of the estate's assets (dep. 45, 55–56). Defendants conclude that plaintiff's dedication to class members whom he does not know personally is questionable.

Defendants' argument is little more than a baseless and petty attack on plaintiff. Plaintiff relies on counsel with respect to his administration of the estate. (Dep. 33.) His personal lack of knowledge of the estate's precise assets is irrelevant. With respect to the estate's mail, plaintiff merely testified that when the estate receives mail from Shearson, Lehman, Hutton, the brokerage firm through which his wife purchased the Gaylord stock, he turns it over to his attorneys unopened. Furthermore, plaintiff's dedication to vindicating the rights of the class members is clearly evident from his deposition. (Dep. 92, 207–08, 300.) The Court finds absolutely no reason to believe that plaintiff is not interested in, or dedicated to, litigating this case on behalf of a class.

### D. Conflict of Interest

▌ Defendants next argue that plaintiff has a conflict of interest arising from his status as administrator of his wife's estate. Defendants rely on *First Interstate Bank of Nevada v. Chapman & Cutler,* 837 F.2d 775 (7th Cir.1988), in which the court affirmed the district court's exercise of discretion in denying class certification in a securities fraud case. The court of appeals stated:

> The district court reasoned that under Nevada law, the [plaintiff] Bank, as ad-

ministrator of Ms. Nelson's estate, had the power to act only for the benefit of the creditors and beneficiaries of the estate, to whom it owed a fiduciary duty. As class representative, the Bank would be assuming obligations to the class, including the obligation to spend estate assets to pay the costs of the representation. Given this inherent conflict between an administrator's duty to act for the benefit of beneficiaries and creditors of the estate and the class representative's duty to act for all the class members, the court concluded that the Bank was not a proper class representative....

... The district court was quite properly concerned with the authority of the executor to sue on behalf of the class as well as the estate, keeping in mind the conflicting duties which would be owed to each. On appeal, the Bank asserts that all of the estate's beneficiaries (and presumably creditors, if any remain, although this is not clear) consent to the Bank's acting on behalf of the class. We have found no evidence of that consent in the record.

837 F.2d at 781. Defendants argue that plaintiff suffers from the same type of conflict of interest which disqualified the plaintiff in *First Interstate Bank*.

The Court is not convinced that this case is governed by *First Interstate Bank*. In the first place, plaintiff argues that he and his two sons, the only beneficiaries of the estate, have all consented to the pursuit of the litigation. (Dep. 168–69, 270.)[1] Secondly, plaintiff cites several cases in which administrators or executors of estates, or trustees of funds, have been held to be adequate class representatives despite allegations of conflicts of interest. *See Shamberg v. Ahlstrom*, 111 F.R.D. 689 (D.N.J. 1986); *Clark v. Cameron–Brown Co.*, 72 F.R.D. 48, 54–55 (M.D.N.C.1976); *Seiden v. Nicholson*, 69 F.R.D. 681, 689 (N.D.Ill. 1976); *State Teachers Retirement Bd. v. Fluor Corp.*, 73 F.R.D. 569 (S.D.N.Y.1976); *Miller v. Alexander Grant & Co.*, [1971–72

Transfer Binder] (CCH) Fed.Sec.L.Rep. ¶ 93,287 at 91,623 (E.D.N.Y.1971).

The primary problem with defendants' argument is that it goes too far. Defendants argue that plaintiff's expenditure of the estate's funds in connection with the litigation may be inconsistent with plaintiff's fiduciary obligations to the estate. This type of conflict, however, could be alleged with respect to any proposed class representative. For instance, if Mrs. Kaplan herself were still alive and wished to pursue this litigation, defendants could argue that she has a conflict of interest because her personal interest in minimizing the expenses of the litigation may be inconsistent with her duty to maximize recovery for the class members. *See State Teachers*, 73 F.R.D. at 571 (rejecting conflict of interest argument for similar reasons); *Kane Associates v. Clifford*, 80 F.R.D. 402, 409 (E.D.N.Y.1978) (same). Moreover, the court in *First Interstate Bank* emphasized that it was simply reviewing the district court's exercise of discretion in finding that the conflict of interest made the plaintiff an inadequate class representative; the court of appeals did not hold that a contrary result would be improper in other circumstances. This Court finds that under the circumstances of the case at hand, a proper exercise of its discretion is to reject defendants' argument that a alleged conflict of interest with his duties as administrator of the estate renders him an inadequate class representative.

In any event, plaintiff avers that the estate will not bear the costs of the litigation because he will assume those costs personally. Defendant argues that this is not a solution, citing *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502 (S.D.N.Y.1976). *Norman* was a securities fraud lawsuit brought by a pension fund which was controlled by, and most of which would eventually be paid to, an individual who offered to advance the expenses of the litigation. The court stated:

---

**1.** There is no indication whether there exist creditors of the estate or whether, if there are

any, they have consented.

We are reluctant to permit a plaintiff to conduct litigation as a class representative, on the understanding that a related party will voluntarily pay the litigation expenses from time to time as they become due. In the first place, it smacks of Maintenance for a non-party to a lawsuit to pay these legal fees and expenses...."

72 F.R.D. at 504.

As plaintiff has pointed out, other cases have permitted class actions to be maintained under these types of circumstances. For example, in *Kane Associates, supra,* the court stated:

Defendants contend further that plaintiff Ferber is not an adequate class representative because he brings this action as fiduciary for two named beneficiaries....

The issue whether Mr. Ferber's fiduciary duties prevent his obligating the trusts to pay the cost of the suit is not an issue in this case, *cf. In re Republic National Life Ins. Co.,* 74 Civ. 1115 (S.D. N.Y. December 31, 1975), since Mr. Ferber himself will pay the expenses of litigation. The suggestion that this fact makes Mr. Ferber an intermeddler or volunteer stirring up litigation so as to be guilty of champerty and maintenance, *cf. Norman v. ARCS Equities Corp.,* 72 F.R.D. 502 (S.D.N.Y.1976), ignores the fact that the trustee is the plaintiff in the suit and has himself not only the right but the obligation to pursue his beneficiaries' claims.

80 F.R.D. at 409–10. *See also Landy v. Amsterdam,* 96 F.R.D. 19, 20–21 (E.D.Pa. 1982). This Court can find nothing inherent in plaintiff's willingness to incur the costs of the litigation which prevents him from serving as a proper class representative. To the extent this result would be precluded by *Norman,* the Court declines to follow that case, which the Court views as a somewhat dated opinion espousing a minority position.

The Court concludes that plaintiff's status as the administrator of his wife's estate does not render him an inadequate class representative.

## E. Ability to Pay Costs

Defendants next argue that plaintiff has not demonstrated an ability to incur the costs necessary to pursue this litigation on behalf of the class. Defendants note that some courts have required a prospective class representative to demonstrate both a willingness and an ability to incur such costs, and that more than a simple assertion of such willingness and ability by the plaintiff are necessary to satisfy this requirement. *See Sanderson v. Winner,* 507 F.2d 477, 479 (10th Cir. 1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975); *Rand v. Monsanto Co.,* No. 85 C 9087 (N.D.Ill. Mar. 23, 1989); *Apanewicz v. General Motors Corp.,* 80 F.R.D. 672, 679–80 (E.D.Pa.1978).

In support of their argument that plaintiff has not satisfied this requirement, defendants note that plaintiff's only source of income is his employment as a maintenance mechanic at a coat factory. (Dep. 4, 25.) Furthermore, although plaintiff claims to have a net worth of over $100,000 (Dep. 84), defendants argue that he refused to answer questions designed to test that assertion. The deposition transcript reveals that plaintiff's refusals to answer were at the instruction of his attorney, who objected to the questions on the basis of relevance. Defendants did not file a motion to compel answers to these questions.

The seminal case on this issue is *Sanderson, supra,* on which defendants rely. In that antitrust action, the district court had ordered the plaintiffs to disclose financial statements, tax returns, and other documents reflecting their ability to finance the expenses of a class action lawsuit. The court had also ordered plaintiffs to disclose their agreements with their attorneys concerning financing of the litigation and payment of attorneys' fees. The court of appeals issued a writ of mandamus reversing the district court's order on the ground that the materials at issue were not relevant. The court stated that the opinion in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), on

which the district court had relied,[2] contains nothing:

> which calls for unlimited inquiry into the financial capacity of plaintiff or which authorizes exposure of the plaintiff's income tax returns together with financial statements, plus documents showing specific financial capacity. Nor are fee arrangements with lawyers a prescribed discovery subject.

507 F.2d at 479. The court then continued:

> Defendants considered it important to ascertain whether plaintiffs were able to pay *all* of the costs in the litigation including extensive depositions. We fail to see relevancy in these inquiries particularly with respect to *in limine* inquiry as to whether a class action is to be allowed. Ordinarily courts do not inquire into the financial responsibility of litigants. We generally eschew the question whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation. We recognize that the class action is unique and we see the necessity for the court to be satisfied that the plaintiff or plaintiffs can pay the costs, and we also agree fully with the Court's ruling in *Eisen* that due process requires decent notice. But we do not read *Eisen* as creating a presumption against finding a class action. Nor does it approve oppressive discovery as a means of discouraging a private antitrust action which, if meritorious, advances an important interest of the government.

*Id.* at 479–80. This Court shares *Sanderson*'s concerns about the use of discovery into this sensitive area as a means for discouraging otherwise meritorious class actions. The need to ensure that class members will receive proper notice and that the class action will be properly funded does not warrant wholesale discovery into the named plaintiff's personal financial affairs.

Plaintiff has satisfied the Court in this case that he is capable of bearing the necessary expenses. In addition to the testimony noted above, plaintiff stated that he understands the concept of net worth (dep. 220), that he has no debts (dep. 220), and that he owns savings bonds, certificates of deposits, and an Individual Retirement Account (dep. 105). Furthermore, his attorneys have agreed to advance the costs of the litigation, in which case "it is not relevant whether plaintiffs themselves or the decedent's estate has sufficient resources to fund the litigation." *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 694 (D.N.J.1986). *See also Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 791 (N.D.Ill.1984). Accordingly, the Court finds that plaintiff's refusal to answer certain questions concerning his financial affairs does not render him an inadequate class representative.

*F. Compliance with Discovery*

■ Defendants also argue that plaintiff's refusal to comply with discovery requests makes him unfit to serve as a class representative. This argument embraces both the issues discussed above with respect to plaintiff's ability to incur the costs of a class action and plaintiff's initial refusal to produce documents reflecting his wife's purchase of the Gaylord stock.

The refusal to comply with discovery requests concerning his financial affairs is not a ground for denying class certification for the reasons discussed in Part III.F. above. The other documents which plaintiff initially refused to provide were his wife's checkbook, the cancelled check used to purchase the stock, and monthly brokerage account statements. Defendants brought a motion to compel production of these documents, and on January 30, 1990, the Court granted this motion with the exception that production of the brokerage statements was required only in redacted form.

There is no allegation or showing that plaintiff's initial refusal to produce these documents (a refusal which presumably was based on the advice of counsel) was in bad faith, and there is no allegation that

---

**2.** In *Eisen*, the Supreme Court held that plaintiffs were responsible for the cost of notice to the class members.

plaintiff refused to produce the documents after the Court granted the motion to compel. The Court is unwilling to find a plaintiff to be an inadequate class representative solely because of a good faith disagreement as to the proper scope of discovery which resulted in a ruling against plaintiff. (This is particularly true where, as in this case, the Court does not fully accept defendants' broad view of discovery. *See supra* at Parts III.B. and III.E.)

### G. Inability to Testify Concerning Facts

■ Defendants argue that plaintiff is not typical of the class members because he is not the purchaser of the stock and thus does not have direct knowledge of the circumstances of the purchase. Defendants assert that this renders them unable to test such issues as materiality and reliance because plaintiff cannot respond to relevant questions during discovery or on cross-examination.

The Court does not view defendants' argument as one that directly concerns the typicality of plaintiff's claims. It is possible, although perhaps unlikely, that a great number of the purchasers have died, making plaintiff typical of the class members. What defendants in fact desire is that the class be represented by a plaintiff who provides the greatest access to relevant information. The Court finds no authority for such a requirement, which would generate a host of burdensome questions: Would a plaintiff be an inadequate representative if he is a poor record-keeper? Would he be an inadequate representative if his memory is not as good as that of another class member? The Court is reluctant to delve into such comparisons of class members for the purpose of determining whether the named plaintiff is typical. Rule 23(a)(3) requires that the representative's "claims or defenses" be typical of the class, and the fact that plaintiff is the administrator of the estate of the purchaser, rather than the purchaser herself, does not make the "claims or defenses" less typical.

Defendants do cite cases where courts have refused to certify a class because of the presence of a possible defense which is peculiar to the named plaintiff. *See Masri v. Wakefield*, 106 F.R.D. 322, 325 (D.Colo. 1984); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 890 (D.N.J.1984); *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334–35 (N.D.Ill.1982). Defendants' argument in this case is not that such a defense exists, but that they are unable to determine whether such a defense exists because plaintiff is not the purchaser.

■ The Court does not find defendants' concern sufficient to deny class certification. The typicality requirement "permits the court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3rd Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). However, "typical" does not mean identical, and individual questions concerning reliance do not render a plaintiff's claims atypical. *Id. See also Green v. Wolf Corp.*, 406 F.2d 291, 301 (2nd Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Alexander v. Centrafarm Group, N.V.*, 124 F.R.D. 178, 184–85 (N.D.Ill.1988); *Lerner v. Haimsohn*, 126 F.R.D. 64, 67 (D.Colo.1989) (declining to follow *Masri, supra*).

### H. Section 12(2) Claim

■ Defendants raise one additional argument against class certification. According to defendants, Lois Kaplan apparently purchased her Gaylord stock in the secondary market, not as part of the initial public offering. There is no allegation in the complaint that she purchased the shares in the public offering. However, the complaint does allege that she purchased the stock at 21⅛ dollars per share (Complaint ¶ 5), which is above the 20½ dollars per share offering price (Complaint ¶ 6(f)), and that she purchased the stock on July 15, 1988, which was one or two weeks after the Registration Statement became effective (Complaint ¶ 5, Gaylord Answer ¶ 5).

Defendants argue that plaintiff runs afoul of the majority rule that "Section 12(2) is limited to the initial distribution of securities and does not encompass post-dis-

tribution trading." *Mix v. E.F. Hutton & Co.*, 720 F.Supp. 8, 12 (D.D.C.1989).[3] Thus in *Hammond v. Hendrickson*, No. 85 C 9829, 1986 WL 8437 (N.D.Ill. July 30, 1986), Judge Marshall denied class certification where the plaintiff did not identify the source of his shares.

Plaintiff responds that Lois Kaplan's purchase was pursuant to the initial public offering and that, in any event, defendants' argument addresses the merits of the lawsuit and is irrelevant to the class certification issue. Plaintiff further argues that "defendants cannot dispute that Mrs. Kaplan's purchase of her Gaylord shares on July 15, 1988, was pursuant to the Company's July 7, 1988, Prospectus and Registration Statement. (Complaint ¶ 5.)" (Reply Mem. at 19.) However, paragraph 5 of the Complaint does not allege that the purchase was made pursuant to those materials, but rather that the "shares had been issued pursuant to" the materials. As in *Hammond*, the complaint does not specify the source of Mrs. Kaplan's shares.

Under these circumstances, the Court cannot find that plaintiff's claims with respect to § 12(2) are typical of those of the class. The Court does not reach, at this stage, the issue of whether plaintiff has stated a viable claim under § 12(2) or whether the Court agrees with the majority of district courts as to the applicability of § 12(2) to secondary trading. However, substantial questions are present as to the viability of plaintiff's § 12(2) claim. Plaintiff seeks certification of a class consisting of all persons who purchased Gaylord stock between June 29, 1988 and April 25, 1989. This class covers such a broad time span of purchases that it most likely includes both purchasers in the initial offering and purchasers in the secondary market. It is unclear into which category plaintiff falls, and perhaps there is even a third category which occupies a gray area between the first two. If plaintiff's status were clear, perhaps the Court could certify a subclass of purchasers in the same position. However, on the present record the Court is unable to do even that. Accordingly, the Court finds that plaintiff's claims are not typical of the class with respect to the § 12(2) count.

### IV. CONCLUSION

For the reasons stated above, plaintiff's motion for class certification is granted with respect to Counts I and II and denied with respect to Count III.

---

**3.** As *Mix* notes, there is a split among district courts on this issue. 720 F.Supp. at 10–11 (cit-   ing cases).