William KAPLAN, Personal Representative of the Estate of Lois Kaplan, on behalf of himself and all others similarly situated, Plaintiff,

v.

Marvin A. POMERANTZ, Warren J. Hayford, Daniel P. Casey, Vernon E. Faulconer, David B. Hawkins, John Hawkinson, Thomas R. Hutchinson, Richard S. Levitt, Gaylord Container Corporation, Salomon Brothers Inc., and Goldman, Sachs & Co., Defendants.

No. 89 C 7033.

United States District Court, N.D. Illinois, E.D.

Oct. 12, 1990.

Michael J. Freed, Kenneth Wexler, Much, Shelist Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., Leonard Barrack, Gerald J. Rodos, Samuel R. Simon, Barrack, Rodos & Bacine, Philadelphia, Pa., for plaintiff.

Garrett B. Johnson, Mark E. Ferguson, Kirkland & Ellis, Bernard J. Nussbaum, Robert B. Millner, Steven M. Levy, Christopher Q. King, Sonnenschine Nath & Rosenthal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This securities fraud lawsuit was brought on behalf of the purchaser of certain securities by her husband, who is also the administrator of her estate. Pending is defendants' motion for decertification of the class. For the reasons stated below, defendant's motion is granted.

### II. FACTS

Plaintiff filed this class action securities fraud lawsuit on September 18, 1989. The parties initially proceeded with discovery on the class certification issue, and plaintiff's deposition was taken on December 18, 1989. Based on plaintiff's refusal to disclose certain documents concerning his financial affairs, his wife's checkbook,[1] and monthly brokerage statements, defendant brought a motion to compel discovery. On January 30, 1990, the Court granted that motion in part, allowing redaction of information concerning stocks other than the stock at issue in this case.

Defendant opposed plaintiff's motion for class certification on a number of grounds, including insufficient investigation of claims on the part of plaintiff and an insufficient willingness and ability on plaintiff's

part to be responsible for the litigation. On May 22, 1990, rejecting most of defendant's arguments, the Court certified a class with respect to two of the three counts of the complaint. *Kaplan v. Pomerantz*, 131 F.R.D. 118 (N.D.Ill.1990).

Defendants now argue that decertification is appropriate because plaintiff gave false answers in his deposition with respect to his involvement in other lawsuits and his wife's ownership of other stocks. The precise language and the context of the testimony at issue is significant, and the Court therefore sets forth the relevant passages in detail:

Q. What assets does your wife's estate have?

A. What assets? Well, the stocks.

Q. Fifty shares of Gaylord stock; is that correct?

A. Yes.

Q. Does the estate hold other stocks?

MR. SIMON [plaintiff's counsel]: Objection. I direct the witness not to answer that question.

Q. Does the—did your wife hold other stocks before her death?

MR. SIMON: Objection, same instruction.

(Dep. 39.)

Q. Mr. Kaplan, do you know what assets your wife held before her death?

A. No; just the stocks.

Q. Do you know what stocks she held before her death?

A. I knew she had this (Indicating).

MR. SIMON: "This," meaning Exhibit 3.

THE WITNESS: The 50 shares of Gaylord.

Q. Do you know if she held any other securities?

MR. SIMON: Objection. We've gone through this route before.

MR. JOHNSON [defendants' counsel, conducting the deposition]: My question now is whether he knows if she held any.

which are the subject of this lawsuit.

---

1. Plaintiff is the administrator of his wife's estate. It was his wife who purchased the stocks

MR. SIMON: It's the same subject matter, Mr. Johnson, phrased in an artfully different way.

MR. JOHNSON: Are you instructing him not to answer?

MR. SIMON: Yes, I am.

MR. JOHNSON: And we're under agreement that he's not going to answer, so we don't have to go through those series of questions.

MR. SIMON: You can do what you want; it's your deposition. But I wish you'd ask something relating to the subject matter of class certification.

Q. Mr. Kaplan, are you refusing to answer that question on the grounds—on the basis of your counsel's directive?

A. Yes.

Q. Do you know, apart from securities, if your wife had any other assets that are part of her estate?

A. No. There is no other assets.

Q. Is it your testimony now that the only assets of your wife's estate are 50 shares of Gaylord stock?

MR. SIMON: Objection to the form. Everything he states is his testimony, so the question is otiose.

MR. NUSSBAUM [defendants' counsel]: What does that mean?

MR. SIMON: I'll find you a dictionary and you can look it up.

MR. JOHNSON: Are you instructing him not to answer on that basis?

MR. SIMON: The question's improper as you—

(Dep. 43–45.)

Q. Mr. Kaplan, is it correct that the only assets that your wife held before her death of any kind were 50 shares of Gaylord stock?

A. Well, my lawyer said I shouldn't answer that question.

Q. No. Your lawyer did not say you shouldn't answer that question.

MR. SIMON: If you know the answer as to what assets she had, answer it.

THE WITNESS: Besides these 50 shares, I don't know.

MR. SIMON: That's the answer.

Q. She may have held assets; you don't know what they are?

MR. SIMON: Objection. That calls for speculation and guesswork.

\* \* \* \* \* \*

Q. Mr. Kaplan, have you made any attempts to find out whether your wife held any assets other than the 50 shares of Gaylord stock before her death?

\* · \* \* \* \* \*

Q. Would you answer the question, Mr. Kaplan.

MR. SIMON: I think he answered it already. You can answer it again.

MR. JOHNSON: Would you read back the question.

(Whereupon, the court reporter read from the record.)

THE WITNESS: Yes.

Q. What efforts have you made?

A. I looked through papers.

Q. What papers did you look through?

A. Any papers I had at home.

Q. What kind of papers?

A. All kinds, I guess.

Q. You mean, financial records?

A. Yes, any kind of records at all.

Q. Can you describe them any better than that, what kind of records there were at home?

A. Not really.

Q. Did you learn anything other than that she owned 50 shares of Gaylord stock?

A. No.

Q. Did you learn that she didn't own other assets?

MR. SIMON: Objection. He just testified he learned nothing. So now you're asking the question in a negative; it's the same question.

Q. Do you understand my question, Mr. Kaplan?

A. No. Can you repeat it, please?

Q. From your review of your papers at home, did you learn that your wife held no other assets other than the 50 shares of Gaylord stock?

A. The only thing she owned was the 50 shares of Gaylord.

MR. JOHNSON: The problem I'm having, Mr. Simon, is that, alternately, he is testifying that he doesn't know whether she held any other assets, and that those were her only assets. And I'm not sure which is correct.

MR. SIMON: They may both be correct.

MR. JOHNSON: They may both be correct, but they can't both be his testimony.

MR. SIMON: But they are his testimony, and you're stuck with it for whatever it's worth. So let's ask another question.

MR. JOHNSON: Let me be clear. It can't be the case that he's testifying both that he doesn't know, and that the only share—the only assets are these 50 shares, and he knows that to be the case.

MR. SIMON: That's in your view. You may be missing something, Mr. Johnson.

MR. JOHNSON: That's correct, that is in my view.

MR. SIMON: And you may be mistaken; you may be missing something.

MR. JOHNSON: Could you enlighten me on what I could possibly be missing?

MR. SIMON: No, because it's not my job to help you take a deposition.

MR. JOHNSON: Then I wish you'd stop trying.

MR. SIMON: Well, I resent that, because I haven't been hindering you in any way....

(Dep. 49–57.)

Q. Mr. Kaplan, do you know if your wife held any other assets other than the 50 shares of Gaylord stock?

A. I don't know.

Q. As far as you know, she might have; is that correct?

MR. SIMON: Objection. You're asking him to speculate. The question's improper.

MR. JOHNSON: No, I'm not asking him to speculate at all. I'm asking about his knowledge.

Q. As far as you know, she might have held other assets; is that correct?

A. I don't know.

Q. If she did hold other assets, you didn't find any records of those other assets in your search; is that correct?

A. Yes.

(Dep. 59–60.)

Q. Do you know of any other security purchase that your wife had ever made?

A. No, I don't know.

(Dep. 63.)

Q. Had she discussed seeing a lawyer with anyone else at that time; do you know?

A. I don't know. I don't know.

Q. Had she discussed Gaylord stock with anyone else at that time?

A. I don't know that answer either.

Q. Did she identify for you the lawyer that she was going to get in touch with?

A. Yes.

Q. Who was that?

A. Leonard Barrack.[2]

Q. Did she tell you where she'd heard of Leonard Barrack?

A. No.

Q. Do you know where she heard of Leonard Barrack?

A. No.

Q. Had you ever heard the name Leonard Barrack before that time?

A. No, I don't think so. I don't—no.

Q. Have you ever been a party to a lawsuit before, Mr. Kaplan?

A. No.

Q. Have you ever given testimony before?

A. No.

Q. Was your wife ever party to a lawsuit?

A. No.

Q. Did your wife ever give testimony?

---

**2.** Mr. Barrack is one of plaintiff's attorneys in this case.

A. No.

(Dep. 73–74.)

Q. This was the only stock, as far as you know, that your wife ever owned; correct?

A. Correct.

Q. And, as far as you know, it was the only investment other than, possibly, jewelry that your wife ever made; correct?

A. Correct.

(Dep. 246.)

Defendants claim that portions of plaintiff's deposition are contradicted by the undisputed facts that on October 6, 1989, plaintiff filed suit in the U.S. District Court for the Central District of California against Medstone International, Inc., and other defendants, and on November 9, 1989, he filed an action in the U.S. District Court for the District of Connecticut against Finevest Foods, Inc., and other defendants. Plaintiff filed both of these cases in his capacity as administrator of his wife's estate, and both cases include allegations of securities fraud. In both cases, plaintiff is represented by one of the same law firms which represents him in this case.

### III. ANALYSIS

Defendant argues that plaintiff's answers in the deposition warrant decertification of the class because they call into question plaintiff's credibility; because correct answers would have affected defendants' arguments on the class certification motion; and because the true facts which have now come out make it necessary for the Court to revisit some of the arguments which it rejected when it certified the class. Plaintiff responds that the answers were not false and that any inconsistencies do not relate to the merits of the action and are so minor that decertification is not warranted.

In order to analyze the parties' various positions, it is first necessary to determine whether, and to what extent, plaintiff gave false testimony in his deposition. There are two distinct lines of questions to which defendants claim plaintiff gave false answers: questions as to whether plaintiff was ever a party in other lawsuits, and questions concerning his wife's ownership of any stock other than the Gaylord stock at issue in this case.

With respect to the first issue, defendants argue that plaintiff lied by denying involvement in any other lawsuits when he was, at the time of his testimony, a plaintiff in two other securities fraud class actions. Plaintiff responds as follows:

[D]efendants' attack upon Mr. Kaplan's veracity is based upon a twisted mischaracterization of his deposition testimony in this case. In their attempt to impugn Mr. Kaplan's honesty, defendants have focused on answers to deposition questions that they have taken out of context and have ignored his answers to other questions. Defendants' accusation (brief at 2–3) that Mr. Kaplan was not truthful in answering "no" when he was asked whether he had "ever been a party to a lawsuit before" (Tr. 73–74) is entirely unfounded. Mr. Kaplan's answer was truthful. He had never been a party to a lawsuit before the initiation of this action.... [The other two actions] were filed *after* the complaint in this action was filed on September 18, 1989. Defendants' accusation that "[i]n late June, defendants' counsel learned that Mr. Kaplan's answer was not true" (brief at 3) is thus not only false, but is belied by defendants' own submission to the Court here [identifying the other lawsuits]. Neither of the experienced defense counsel who interrogated Mr. Kaplan at his deposition here, in fact, asked Mr. Kaplan anything about his involvement in current litigation. Mr. Kaplan answered truthfully and honestly that he had never been a party to a lawsuit before he filed this action in September 1989.

(Mem. in Opposition at 5–6; emphasis in original.) The problem with this response is that it ignores the actual language of the question and answer at issue. Defendants' counsel did not ask plaintiff whether he had ever been a party to a lawsuit "before he filed this action," and plaintiff did not answer that he had never been a party to a

lawsuit "before he filed this action." The question was *"have* you ever been a party to a lawsuit before?" and the answer was "no." There is no reasonable interpretation of this question and answer other than that plaintiff was asked whether he had ever been a party to another lawsuit at any time prior to the time that the question was asked, and that plaintiff denied that he had. Plaintiff's attempt to retroactively add qualifiers to the question and answer which were not present at the time is a transparent attempt to save face now that he has been confronted with the truth. The Court can reach no other conclusion than that plaintiff gave a false answer and that plaintiff's counsel acquiesced in that false answer.

The second issue is whether plaintiff gave false testimony as to whether his wife held stocks other than the Gaylord stock. Plaintiff concedes that he knew at the time of the deposition that his wife had owned other stocks, but claims that at the time of his wife's death, the only stock he knew of was the Gaylord stock. Plaintiff's counsel explain his deposition answers as follows:

> [D]efendants have twisted and mischaracterized Mr. Kaplan's deposition testimony and have ignored his answers to other questions. Defendants fail to note that prior to the deposition questions and answers that they cite, Mr. Kaplan unambiguously testified in response to two separate questions that his wife and her estate owned not just Gaylord stock but other "stocks":
>
> Q. What assets does your wife's estate have?
> A. What assets. Well, the stocks. (Tr. at 39.)
> Q. Mr. Kaplan, do you know what assets your wife held before her death?
> A. No; just the stocks. (Tr. at 45 [sic: 43].)
>
> This testimony negates any implication that Mr. Kaplan was lying about the content of his wife's estate.
>
> After stating that his wife and her estate owned "the stocks," Mr. Kaplan

was asked to disclose the identity of the other stocks (Tr. 43–44). His counsel properly instructed him not to disclose the identity of the other stocks, and Mr. Kaplan followed that instruction. (Tr. 44.) Later, when defendants asked the questions set forth at pages 3–4 of their brief,[3] Mr. Kaplan understood the questions to ask for his knowledge *at the time of his wife's death* about her stock purchases. *See* Kaplan Affidavit ¶ 7, Exhibit A hereto. Since he had already stated that his wife's estate had "the stocks" and his counsel had instructed him not to disclose the details of the stock purchases other than the Gaylord stock, Mr. Kaplan understood the later questions to be asking him for his knowledge at the time of his wife's death about her stock purchases. Kaplan Affidavit ¶ 7. Furthermore, at the time his wife died, Mr. Kaplan did not, in fact, know what stocks his wife had purchased other than the shares of Gaylord stock. *See Medstone* Deposition Transcript at 23–29 . . . .

(Mem. in Opposition at 8–9; emphasis in original; citations omitted.)

Again, this response ignores the plain language of the deposition testimony. Even in the passages on which plaintiff himself relies (Dep. 39, 45), plaintiff did not say that his wife held "other stocks;" he answers only that his wife held "the stocks." Because the only stocks which were ever discussed were the Gaylord stocks, and because in other places plaintiff testified that the only assets were the Gaylord stocks, the only reasonable interpretation of this testimony is that it referred to "the Gaylord stocks." This is particularly true when, for instance, the first passage is considered in light of the followup questions:

Q. What assets does your wife's estate have?
A. What assets? Well, the stocks.
Q. Fifty shares of Gaylord stock; is that correct?
A. Yes.

---

**3.** The referenced passages are from pages 55–56, 63, and 246 of the deposition.

Q. Does the estate hold other stocks?

MR. SIMON [plaintiff's counsel]: Objection. I direct the witness not to answer that question.

(Dep. 39.) This passage leaves no doubt that when plaintiff said his wife's estate's assets were "the stocks," he was referring only to the Gaylord stocks. The same is true for the second passage plaintiff relies on. Considered along with its follow-up question, this passage reads:

Q. Mr. Kaplan, do you know what assets your wife held before her death?

A. No; just the stocks.

Q. Do you know what stocks she held before her death?

A. I knew she had this (Indicating).

MR. SIMON: "This," meaning Exhibit 3.

THE WITNESS: The 50 shares of Gaylord.

(Dep. 45.)

Similarly, plaintiff's contention that he was testifying only as to what he knew at the time of his wife's death, rather than what he knew at the time of the deposition, is untenable. There simply is no support in the transcript for such an interpretation. When the transcript is read in light of the facts as they are now known to be, it reflects a deliberate attempt to conceal information. Of course, plaintiff contends that information as to other securities owned by his wife is not relevant to this case; but if that were his position, he could have objected on that basis rather than answering falsely.

In light of these instances of false deposition testimony, the Court cannot in good conscience allow this case to continue as a class action with plaintiff serving as the class representative. A plaintiff's honesty and integrity are important considerations in allowing him to represent a class. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949); *Armour v. City of Anniston*, 89 F.R.D. 331, 332 (N.D.Ala.1980). In this case, plaintiff's statements go beyond minor inconsistencies. Plaintiff may be correct in asserting that the subjects of his statements are of marginal relevance to

this lawsuit; nonetheless, they evince a willingness to give intentionally false and misleading testimony in an effort to further his interests in this litigation. Under these circumstances, allowing him to prosecute this case as a class action would not be fair to the Court, to the defendants, or to the other individuals whose interests plaintiff purports to represent.

Plaintiff argues that even if his credibility has been called into question to some extent, that does not warrant decertification of the class. Plaintiff argues that in considering the adequacy of representation, courts consider two factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to the class." *Kaplan*, 131 F.R.D. at 121, quoting *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977). A plaintiff with credibility problems, however, does have interests "antagonistic to the class." Furthermore those credibility problems interfere with plaintiff's satisfaction of the typicality requirement.

The Court finds that the typicality and the adequacy of representation requirements for class actions pursuant to Rule 23 are no longer satisfied, and the class shall therefore be decertified. *Cf. Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir.1983) (court's preliminary conclusion that plaintiff's deposition testimony was erroneous warranted denial of class certification even if testimony was product of innocent mistake); *Darvin v. International Harvester*, 610 F.Supp. 255, 257 (S.D.N.Y.1985) (credibility problems apparent from plaintiff's deposition rendered him inappropriate as class representative); *Cohen v. Laiti*, 98 F.R.D. 581, 584 (E.D.N.Y.1983) (class certification denied because plaintiff's deposition rendered his credibility subject to attack); *Armour*, 89 F.R.D. at 332 (plaintiff was not proper class representative where she had perjured herself at trial).

The Court is also extremely troubled by the conduct of plaintiff's lawyers during the deposition. Its review of the transcripts has convinced the Court—as it must

any neutral observer—that plaintiff's counsel was at least a silent accomplice in, and at most encouraged, plaintiff's false testimony. Plaintiff's counsel should have made defendants aware of the true facts; instead, their comments during the depositions reveal an intent to keep the truth hidden even at the cost of allowing their own client to lie. This behavior constitutes an alternative reason for the Court's conclusion that the adequacy of representation prong of Rule 23 has not been satisfied.[4]

Because the Court finds that the problems of plaintiff's credibility and his counsel's behavior are sufficiently serious in themselves to warrant decertification of the class, the Court does not reach defendants' other arguments in favor of decertification.

## IV. CONCLUSION

For the reasons stated above, defendants' motion for decertification of the class is granted.[5]

---

4. The strong language of plaintiff's counsel's brief, in which his counsel accuse defendants' counsel of making false and unfounded accusations and of distorting the record cannot help but make the Court recall a very similar case in which attorneys were sanctioned for responding to allegations of misconduct in discovery proceedings by baselessly accusing opposing counsel of improprieties. *See C & F Packing Co. v. Doskocil, Inc.,* 126 F.R.D. 662 (N.D.Ill.1989). The Court commends the parties in this case for their restraint in not raising issues of sanctions—issues which often engulf the more substantive aspects of a case.

5. In the *Medstone* case, the defendants opposed class certification on the ground that plaintiff had given false deposition testimony in connection with this case. The court rejected the defendants' argument, stating:

> With regard to the adequacy of representation requirement, the court finds that inconsistencies in the testimony of plaintiff Kaplan

"hardly serve to disqualify plaintiff as a class representative. They are not of such a nature as to unduly burden the class by diverting attention from the substance of the basic claim advance on behalf of the class." *Kronfeld [v. Trans World Airlines],* 104 F.R.D. [50,] at 52 [S.D.N.Y.1984].

*Kaplan v. Rose,* No. SACV 89-740AHS (C.D.Cal. July 30, 1990). Plaintiff has brought this decision to this Court's attention but does not argue that it binds this Court in any way. The *Medstone* court's analysis is cursory—it appears in a two-page "tentative ruling"—and it is not clear whether that court was apprised of all the facts. That court also may have viewed plaintiff's deposition testimony in separate litigation as too tangential to merit substantial consideration. Here, in contrast, the Court has been apprised of all the facts, and the testimony was given in connection with this case. Accordingly, the Court does not view the *Medstone* court's decision as relevant.