Dr. Sampat SHIVANGI and Dr. Udaya
S. Shivangi, Plaintiffs-Appellants
Cross-Appellees,

v.

DEAN WITTER REYNOLDS, INC.,
Thomas Aitken and James Y. Palmer,
Defendants-Appellees Cross-Appellants.

No. 86–4370.

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1987.

Satterfield & Allred, Michael Farrell, Gene D. Berry, Jackson, Miss., for plaintiffs-appellants cross-appellees.

William J. Fitzpatrick, New York City, for amicus curiae.

Thomas, Price, Alston, Jones & Davis, Kenneth A. Rutherford, Janice Holley Parsons, Jackson, Miss., for defendants-appellees cross-appellants.

Before WISDOM, HIGGINBOTHAM and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Dr. and Mrs. Sampat S. Shivangi sued Dean Witter Reynolds, Inc., under SEC Rule 10b–5 for failing to disclose that Dean Witter's account executives receive higher compensation for principal trades of over-the-counter stocks in which Dean Witter is a market maker than for other sales. The district court denied the Shivangis' request during discovery for Rule 11 sanctions against Dean Witter, declined to certify the suit as a class action, denied leave for the Shivangis to amend their complaint to add a RICO claim, and finally granted Dean Witter's motion to dismiss at the conclusion of the Shivangis' trial evidence. The Shivangis appeal urging that the district court erred in these actions. Dean Witter attempts to appeal the district court's finding that information about account executive compensation is material. Noting that the district court's comments on materiality are dicta, we affirm.

## I

### A

In 1981, Dean Witter Reynolds, Inc., was a market maker in the over-the-counter market[1] for Keldon Oil stock. As a market maker, Dean Witter held itself out as being willing to buy and sell Keldon Oil stock for its own account on a regular or

---

1. The over-the-counter market represents the purchases and sales of securities of publicly-traded corporations between brokers, for themselves and for their customers, rather than on a national stock exchange such as the New York Stock Exchange. *See* Black's Law Dictionary 996 (5th ed. 1979). The stock of approximately ninety percent of the publicly-traded corporations is traded over the counter.

continuous basis, *see* 15 U.S.C. § 78c(a)(38), according to quotations in National Association of Securities Dealers Automated Quotations, a computerized quotations system. NASDAQ lists bid prices and ask prices, or the prices at which a customer can sell and buy a stock, respectively.

Unless a retail customer requests Dean Witter to handle the transaction as an agent, Dean Witter handles as a principal over-the-counter trades in which it is a market maker—that is, Dean Witter sells the stock to its customer from its own account instead of acting as the customer's agent to buy the stock from another.[2] This does not mean that Dean Witter has in inventory the stock at a cost that makes the principal transaction profitable. It means that Dean Witter will acquire the stock long or short, or take it from inventory, and sell it to the customer at the prices quoted on NASDAQ. Dean Witter's Jackson, Mississippi, office handles as a principal approximately 75 to 80 percent of its over-the-counter trades in which Dean Witter makes a market.

When Dean Witter acts as an agent, it receives a commission and passes 30 to 40 percent of the commission to the account executive as his compensation. When Dean Witter acts as a principal, it sells the stock at the inside ask price—the lowest price any market maker asks—and then adds a "mark-up" to the price as its compensation. Dean Witter's mark-up never exceeds the amount the commission would be in an agency transaction. In fact, the customer pays less than he would in an agency transaction because Dean Witter rounds the mark-up to the nearest $1/16$ below what the agency commission would have been. Dean Witter pays the account executive thirty to forty percent of the mark-up and also of the spread—the difference between the bid price and the ask price—sometimes resulting in higher com-

pensation for principal transactions than for agency transactions.

### B

Dr. Sampat S. Shivangi and his wife, Dr. Udaya S. Shivangi, opened an investment account with Dean Witter in the spring of 1981. On May 13, 1981, Thomas Aitken, the Shivangis' account executive at Dean Witter's Jackson, Mississippi, office, called the Shivangis to recommend that they purchase shares in Keldon Oil. Heeding the recommendation, the Shivangis purchased through Dean Witter 400 shares of Keldon Oil stock for $17\frac{1}{2}$ per share, or $7000.00 total.

At the time of the purchase, Keldon Oil stock had a market price of 15 bid and $17\frac{1}{8}$ ask, or a spread of $2\frac{1}{8}$.[3] The mark-up was $\frac{3}{8}$. Aitken's compensation was forty percent of the mark-up and spread, or $400.00.[4] Dean Witter's normal commission on an agency transaction for 400 shares at $17\frac{1}{8}$ is $154.70, of which Aitken would have received thirty to forty percent, or $46.41 to $61.88, rather than the $400 he was paid.

Dean Witter sent the Shivangis a confirmation slip that complied fully with SEC Rule 10b–10, 17 C.F.R. § 240.10b–10, by stating the purchase price, indicating Dean Witter's role as principal, and stating "DWR IS MARKET MAKER." At no time were the Shivangis told the account executive's compensation.[5]

The market price of Keldon Oil stock rose about ten percent shortly after the transaction, then declined steadily. The Shivangis sold their shares in December 1981 at $7\frac{1}{4}$ per share, or $2,900.00 total.

### C

On July 13, 1982, the Shivangis sued Dean Witter, Tom Aitken, and James Palm-

---

**2.** Dean Witter generally acts as an agent when trading on a national stock exchange.

**3.** A normal spread in 1981 was $\frac{1}{4}$ to $\frac{3}{8}$. The large spread likely reflected a slow market in the stock.

**4.** $.40 \times (400$ shares$) \times \$(2\frac{1}{8} + \frac{3}{8})/$share $= \$400.00$

**5.** Effective March 17, 1986, the SEC amended Rule 10b–10 to require disclosure of the mark-up also. *See* 50 Fed.Reg. 37,652 (1985) (codified at 17 C.F.R. § 240.10b–10(a)(8)(i) (1986)).

er, who was the branch manager of Dean Witter's Jackson office, alleging that Aitken made misleading statements of material fact about Keldon Oil stock and omitted other material facts in violation of the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), of SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, and of various state laws. When the Shivangis learned in discovery about the spread and the account executive compensation system, they amended their complaint to allege that the failure to disclose the compensation information violated Rule 10b–5 and state laws. They also sought to represent a class of similarly situated purchasers.

During discovery, the Shivangis sought production of certain SEC forms and NASD reports for a five-year period. Dean Witter submitted affidavits that the request was unduly burdensome, which the magistrate credited. The Shivangis later sought Rule 11 sanctions, claiming the affidavits were false and that Dean Witter failed to satisfy the duty of reasonable inquiry. The district court denied sanctions.

In November 1983, the Shivangis moved for class certification of their claims under Fed.R.Civ.P. 23(b)(3), suggesting a subclass for purchasers of Keldon Oil stock nationwide and a second subclass for Mississippi residents who purchased over-the-counter stocks from Dean Witter. Dean Witter opposed the motion and moved for summary judgment on all issues. The district court concluded that common questions of law and fact did not predominate over individual questions, and denied class certification. *Shivangi v. Dean Witter Reynolds, Inc.,* 107 F.R.D. 313, 325 (S.D.Miss.1985). The district court granted Dean Witter's motion for summary judgment for the state-law claims, but denied the motion for the federal securities claims because the district court believed the information on

compensation could be material. *Id.* at 321–23.

On October 1, 1985, the Shivangis sought leave to amend their complaint to allege a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68. The district court denied the motion. At the pretrial conference in April 1986, the Shivangis abandoned all claims except that based on the failure to disclose the account executive's compensation.

At the conclusion of the Shivangis' proof in the bench trial, Dean Witter moved to dismiss for the Shivangis' failure to prove scienter. The district court granted Dean Witter's motion, stating, "Although the Court considers Defendants' failure to disclose the compensation distinction between an agency and a principal transaction to Plaintiffs to be a material omission which would have affected Plaintiffs' decision to purchase Keldon Oil stock, Plaintiffs presented no evidence that the omission was made with any intent to deceive, manipulate, or defraud Plaintiffs." *Shivangi v. Dean Witter Reynolds, Inc.,* 637 F.Supp. 1001, 1005 (S.D.Miss.1986). The Shivangis timely appeal the dismissal of their action, and also attack the denial of class certification, the denial of leave to file an amended complaint alleging a RICO violation, and the failure to impose Rule 11 sanctions. Dean Witter appeals, quarreling with the district court's statement that the omission of compensation information was material.

## II

The Shivangis argue that the district court erroneously granted Dean Witter's motion to dismiss for failure to prove scienter because the Shivangis proved Dean Witter's knowing or reckless omission or because they proved Dean Witter intended to manipulate the market for Keldon Oil Stock.[6] When the district court grants a defendant's motion to dismiss for insuffi-

---

**6.** To establish a claim for relief under Rule 10b–5, the Shivangis had to prove:

(1) a misrepresentation or omission or other fraudulent device; (2) a purchase or sale of securities in connection with the fraudulent device; (3) scienter by defendant in making the misrepresentation or omission; (4) mate-

riality of the misrepresentation or omission; (5) justifiable reliance on the fraudulent device by plaintiff (or due diligence against it); and (6) damages resulting from the fraudulent device.

*Warren v. Reserve Fund, Inc.,* 728 F.2d 741, 744 (5th Cir.1984) (footnote omitted).

ciency of the plaintiff's evidence in a bench trial, we reverse the district court's findings only if they are clearly erroneous. *Weissinger v. United States*, 423 F.2d 795, 798 (5th Cir.1970) (en banc). We are not persuaded that the district court clearly erred in finding that the Shivangis failed to prove scienter.

■ Dean Witter knowingly failed to disclose the account executive compensation to the Shivangis, but knowledge of omitted facts does not itself establish scienter. *See SEC v. Southwest Coal & Energy Co.*, 624 F.2d 1312, 1321 n. 17 (5th Cir.1980). Rather, the Shivangis must prove that Dean Witter acted with actual "intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976), or severe recklessness, which is

> limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961–62 (5th Cir.) (en banc), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981).

The record supports the district court's finding of no actual intent to deceive. The record contains no evidence that Aitken or Dean Witter actually intended to deceive the Shivangis by failing to disclose the compensation information, nor does it establish that Aitken recommended the stock because of his unusual compensation. Rather, Aitken recommended Keldon Oil stock because Dean Witter's best analyst considered it a good investment.

■ The record also supports the district court's determination that the defendants did not know nor should have known the danger of misleading the customers by the omission. At the time of the purchase, neither the SEC nor any court had determined the compensation information to be material. Indeed, the materiality of this information remains an open question today. Dean Witter fully disclosed all that the SEC specifically requires a market maker acting as a principal to disclose under Rule 10b–10. *Cf. Warren v. Reserve Fund, Inc.*, 728 F.2d 741, 745 (5th Cir.1984) (noting compliance with SEC requirements indicates lack of severe recklessness). The Shivangis did not introduce evidence establishing that compensation to sales personnel is ordinarily disclosed in the securities industry, a fact that might have indicated to Dean Witter the danger of nondisclosure. Finally, the evidence did not establish that the compensation system affected the price of the stock to the Shivangis, nor the actual value of the stock. Thus, any danger of misleading the customers by the omission was not obvious.

Jeremiah Mullins, head of Dean Witter's Trading Department, testified that Dean Witter intended its compensation system to provide a uniform system for account executive compensation in over-the-counter, principal transactions and also to restore account executive compensation to competitive levels existing before 1980, when an SEC rule requiring NASDAQ display of inside quotation prices and an NASD rule requiring market makers to sell at the inside ask price had the incidental effect of reducing account executives' compensation. *See* 17 C.F.R. § 240.11Acl–2(c)(2)(i)(A)(*l* ). Such is not the intent essential to a violation of Rule 10b–5.

■ Nor did the Shivangis prove Dean Witter's intent to manipulate the demand for over-the-counter stocks. The Shivangis argue that the compensation to account executives for selling over-the-counter stocks in which Dean Witter is a market maker was designed to stimulate artificially demand for the stocks through financial incentives and is therefore manipulative. Manipulation is "virtually a term of art when used in connection with securities markets." *Ernst & Ernst*, 425 U.S. at 199, 96 S.Ct. at 1384. It "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Santa Fe Ind., Inc. v.*

*Green,* 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977). Thus, the fact that the compensation system gave Aitken an incentive to sell Keldon Oil stock does not by itself define a manipulative device. *See Fey v. Walston & Co.,* 493 F.2d 1036, 1048 (7th Cir.1974) (motive to earn commission does not alone define manipulation). The Shivangis did not prove more. The district court properly granted Dean Witter's motion to dismiss.

## III

■ The Shivangis argue that the district court erred in denying class certification. The Shivangis had the burden to prove each of the four requirements in Fed.R.Civ.P. 23(a) and also one of the requirements of Fed.R.Civ.P. 23(b). *See Warren,* 728 F.2d at 747. In this case the Shivangis attempted to certify a class under Fed.R.Civ.P. 23(b)(3), which requires that common questions of law and fact predominate over individual questions. The district court determined that individual questions of law and fact predominated over common questions. The district court's decision on certification may be overturned only for abuse of discretion. *Warren,* 728 F.2d at 747.

■ The Shivangis did not establish that Dean Witter uniformly failed to disclose account executive compensation. In fact, the Shivangis submitted a survey of Dean Witter account executives in 1985 indicating that in about forty-four percent of the cases the account executives disclosed their compensation to the customer before execution of over-the-counter transactions. The Shivangis offered no proof on the account executives' practice in 1981, but only that Dean Witter did not require the disclosure. Thus, we cannot fault the district court's conclusion that the critical fact of nondisclosure was not common to the putative class. *See Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880, 882–83 (5th Cir.1973) (failure to prove standardized representations bars class action). It follows that we cannot find that the district court abused its discretion in its predomination analysis. *See Grainger v.*

*State Sec. Life Ins. Co.,* 547 F.2d 303, 307–08 (5th Cir.1977), *cert. denied,* 436 U.S. 932, 98 S.Ct. 2832, 56 L.Ed.2d 777 (1978).

## IV

The Shivangis assert that the district court erred in denying them leave to amend their complaint to allege a RICO violation. The grant or denial of leave to amend is within the district court's discretion, *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), but leave should be freely given in the absence of a "substantial reason to deny the leave to amend," *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir.1981). The Supreme Court has indicated that valid reasons to deny leave include:

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

*Foman,* 371 U.S. at 182, 83 S.Ct. at 230.

■ Because the Shivangis unduly delayed seeking this amendment, the district court did not abuse its discretion. The Shivangis sought to add the RICO claim over three years after filing this suit, nearly one and a half years after their latest amendment, over a year after discovery was completed, and two months after the district court had ruled on the motions for class certification and summary judgment. The Shivangis claim that the delay was not undue because the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), issued three months before the Shivangis moved to amend, clarified that a RICO plaintiff need not allege a criminal conviction as a predicate act nor a distinct "racketeering injury." Before *Sedima,* however, we did not require proof of a distinct racketeering injury or a previous criminal conviction. *See, e.g., Alcorn County v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160, 1169 (5th Cir.1984); *see also Sedima,* 105 S.Ct. at 3280 n. 6 (discussing *Alcorn* ). Thus, the Shivangis did not sat-

isfy their burden to establish a "valid reason for [their] neglect and delay." *Nilsen v. City of Moss Point*, 621 F.2d 117, 122 (5th Cir.1980) (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967)). While leave to amend must be freely given, that generous standard is tempered by the necessary power of a district court to manage a case. The district court was within the bounds of its discretion in denying leave to amend the complaint. In any event, the Shivangis were not prejudiced by the denial, for the alleged RICO violation rested on the securities fraud claim for which the Shivangis failed to prove scienter.

### V

■ The Shivangis argue that the district court erred in not awarding sanctions under Fed.R.Civ.P. 11 against Dean Witter's counsel. The Shivangis contend that defense counsel breached his duty of reasonable inquiry by filing false affidavits during discovery in order to "stonewall."

Historically, we review the district court's grant or denial of sanctions under Rule 11 for abuse of discretion. *See Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 787–88 (5th Cir. 1986); *Davis v. Veslan Enterprises*, 765 F.2d 494, 498 (5th Cir.1985). Recently, however, two panels in our circuit have imposed a new and more intrusive standard of review:

> Findings of fact used by the district court to determine that rule 11 has been violated are reviewed under the clearly erroneous standard. The legal conclusion of the district court that a particular set of facts constitutes a violation of rule 11 is reviewed *de novo*. The amount or type of sanction imposed is examined under an abuse of discretion standard.

*Thomas v. Capital Sec. Serv., Inc.*, 812 F.2d 984, 989 (5th Cir.1987) (quoting *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 26 (5th Cir.1987) (citations omitted; footnotes omitted)). To clarify the proper standard of review, we have determined to rehear *Thomas* en banc. *Thomas v. Capital Sec. Serv., Inc.*, 822 F.2d 511

(5th Cir.1987). But we need not await that decision because we affirm under the more intrusive standard of *Thomas*.

The record evidences reasonable inquiries and bases for the statements in the affidavits opposing the Shivangis' discovery requests. The Shivangis had requested four sets of documents relevant to their motion for sanctions: (1) five years of SEC form X–17–A–12(2), a quarterly report about over-the-counter stocks for which a brokerage firm is the market maker, for the more than 1,000 stocks in which Dean Witter was market maker; (2) five years of all reports to the NASD on stocks in which Dean Witter was market maker; (3) a list of all stocks in which Dean Witter was market maker since 1978; and (4) a daily inventory of Keldon Oil stock since Dean Witter became market maker in the stock. Dean Witter opposed the requests on grounds of relevance, confidentiality of some of the documents, and on the rather self-evident burdensomeness of the request—especially since the plaintiffs had yet to move for class certification.

Michael Gregg, Assistant General Counsel of Dean Witter, submitted an affidavit detailing the lengthy search required to find someone in Dean Witter who was even familiar with SEC form X–17–A–12(2), much less who knew where it was filed. That person, Daniel McCarthy, did not contradict in his deposition Dean Witter's allegation that production would be extraordinarily burdensome. He testified that that it would take about fifteen minutes per document for the two years of forms X–17–A–12(2) in his control. He did not testify about forms from the earlier years the Shivangis requested, nor about the other, daily (not quarterly) documents the Shivangis sought.

Arnold Wolter, the Assistant Manager of the Over-The-Counter Trading Department, indicated that he was not personally familiar with the files of the other documents the Shivangis requested, but that he "presume[d]" that the files are maintained. He also noted that some of the documents are normally discarded and would have to be reconstructed from the ledger sheets. This

testimony therefore did not prove false the statements in the affidavits opposing the Shivangis discovery requests.

From the record, we cannot say that a finding that the affidavits were not false and were made after reasonable inquiry is clearly erroneous. Even reviewing the facts themselves de novo, we find no reason to disturb the district court's denial of sanctions. Because the affidavits were not false and were made after reasonable inquiry, the standards of Rule 11 are satisfied. The district court did not abuse its discretion in denying sanctions under either *Thomas* or *Southern Leasing Partners, Ltd.*

## VI

■ Concerned about the possible collateral use of the district court's statements that account executive compensation is a material fact that should have been disclosed, Dean Witter urges that we vacate or reverse that finding. We do not review the issue because the district court's findings on materiality are not final: the district court made the statements in denying a motion for summary judgment, 107 F.R.D. at 321, and in dicta after granting the motion to dismiss for failure to prove scienter, 637 F.Supp. at 1005. In any event, the district court's comments were made before defendants' proof, and doubtlessly lack preclusive effect. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979) (It is "unfair to apply offensive estoppel ... where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result") (footnote omitted).

## VII

In sum, the district court's finding that the Shivangis failed to prove scienter is not clearly erroneous. The district court did not abuse its discretion in denying class certification, in denying leave to amend to allege a RICO violation, and in denying

Rule 11 sanctions. The judgment of the district court is AFFIRMED.