**In re SEAGATE TECHNOLOGY II SECURITIES LITIGATION.**

**This Document Relates to: All Actions.**

**No. C–89–2493(A)–VRW.**

United States District Court, N.D. California.

July 12, 1994.

Steven O. Sidener, Glenn M. Goffin, Gold & Bennett, A Professional Law Corp., San Francisco, CA, Berger & Montague, Sherrie Savett, Todd S. Collins, Philadelphia, PA, Milberg Weiss Bershad Specthrie & Lerach, William S. Lerach, Blake M. Harper, San Diego, CA, for plaintiffs and All Others Similarly Situated.

James A. DiBoise, Mary Anne Rodgers, Sara Harrington, Thomas J. Martin, Wilson, Sonsini, Goodrich & Rosati, A Professional Corp., Palo Alto, CA, for defendants.

### ORDER

WALKER, District Judge.

In an order dated February 11, 1994, the court expressed reservations about the propriety of certifying this securities fraud litigation as a class action. *In re Seagate Technology II Securities Litigation,* 843 F.Supp. 1341 (N.D.Cal.1994).

Plaintiffs allege that defendants, by intentionally withholding material information that they had a duty to disclose, caused the trading price of Seagate common to be artificially inflated for the six-month period from April 13, 1988, to October 5, 1988. Instead of this alleged fraud becoming fully known in a one-time disclosure, plaintiffs allege that the truth trickled out through a series of partially curative disclosures, each of which caused the trading price of Seagate common to ratchet down. These partial disclosures were allegedly made on: July 18, 1988; August 6, 1988; September 21, 1988; and October 5, 1988. Pursuant to FRCP 23, plaintiffs had sought certification of a class consisting of all persons who purchased shares of Seagate common during the period from April 13, 1988, to October 5, 1988, inclusive. But the court identified two types of conflict that may arise among the members of such a class.

First, those plaintiffs who purchased shares during the period of price inflation but who did not sell any within the period (retention plaintiffs) would have interests very different from those of traders who both bought and sold during the relevant period (in/out plaintiffs). Id at part III.A. The court observed that this "seller-purchaser" conflict is exacerbated in this case because the prolonged period of partial curative disclosures increases the likelihood of finding in/out traders in the plaintiff class. Id at part IV.

Second, the court noted that a conflict might arise among those plaintiffs who continue to hold Seagate stock and those plaintiffs who do not. Id at part III.B. Because the information developed in the lawsuit begins, at some point, to affect the price of the security, those plaintiffs with continuing equity interests have an incentive to minimize the aggregate liability of the issuer. Therefore, current equity holders may attempt to shape the evidence in such a fashion as to limit, or eliminate, the recoveries of other class members. This "equity" conflict may arise in any case in which shares of the issuer are still held by certain class members.

The court concluded that the combined effect of these two forms of conflict could be sufficiently severe as to preclude satisfaction of the FRCP 23 requirement of "adequacy of representation." *Id* at 1365. Accordingly, the court deferred the class certification decision until the existence and severity of these conflicts could be explored at an evidentiary hearing. *Id* at 1365–66. Plaintiffs were instructed that at such a hearing, they would bear the burden of demonstrating that the retention plaintiffs in the class will "predominate" over the in/out plaintiffs. *Id* at 1365–67. Only then could the court be confident that the interests of the class members are sufficiently aligned to meet the prerequisites of FRCP 23. Id.

Instead of submitting these issues to an evidentiary hearing, plaintiffs' counsel has modified the scope of the class for which they seek certification. To avoid the exacerbating effects of the alleged partial curative disclosures, counsel now seek certification of a class consisting only of persons who purchased Seagate common prior to the first such partial disclosure on July 18, 1988. Plaintiffs' counsel have further limited their proposed class to retention plaintiffs only.

This new approach by plaintiffs appears to avoid the "seller-purchaser" conflict. This goes far in meeting the court's concerns, although still left unaddressed is the possibility of "equity" conflicts in the class. The nature and extent of the "equity" conflicts are difficult to determine as they entail an analysis of the effect of this litigation on the price of Seagate stock. Unfortunately, neither plaintiffs nor defendants have developed the facts in such a way as to permit the court properly to address the "equity" conflicts.

As the court explained at length in the February order, the possibility of conflicts among securities traders has not in the past much deterred courts from certifying fraud-on-the-market securities cases as class actions. No doubt, this results from the importance which courts have attached to affording a legal remedy for the dissemination of fraudulent or misleading information to securities markets.

In light of this policy-driven background, and given that counsel's decision to pursue claims only on behalf of retention traders has eliminated a substantial amount of the conflicts in the class, the court concludes that the continued existence of "equity" conflicts alone should not prevent class certification in this case. Accordingly, the court hereby conditionally certifies the following class: all persons who purchased shares of Seagate common during the period from April 13, 1988, to July 18, 1988, inclusive, who did not sell any shares of Seagate common during the same period.

IT IS SO ORDERED.