The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

Steven **KALODNER**, Simon Sinnreich and Solomon Chazan, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

**MICHAELS STORES, INC.**, Sam Wyly, R. Don Morris, Jack Bush and Charles J. Wyly, Jr., Defendants.

Nos. 3–95–CV–1903–BD, 3–95–CV–1904–BD.

United States District Court, N.D. Texas, Dallas Division.

March 21, 1997.

Susman Godfrey, Law Office of Susman Godfrey, Houston, TX, Barry Craig Barnett, Terrell Wallace, Oxford, Dallas, TX, Richard H. Weiss, Regina L. LaPolla, Janine L. Pollack, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Diane P. Doherty, Spector & Roseman, San Diego, CA, Jeffrey L. Kodroff, Spector & Roseman, Philadelphia, PA, for Steven Kalodner, Simon Sinnreich, Solomon Chazan.

Susman Godfrey, Law Office of Susman Godfrey, Houston, TX, Barry Craig Barnett, Terrell Wallace, Oxford, Dallas, TX, David A. P. Brower, Michael Jaffe, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Charles J. Piven, Baltimore, MD, for F. Richard Manson.

Patricia Jane Villareal, William Kelly Stewart, Jones, Day, Reavis & Pogue, Dallas, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Plaintiffs Richard Manson, Simon Sinnreich, Solomon Chazan and Avrimin Kogan have filed a motion to certify this securities

fraud case as a class action.[1] The proposed class consists of "all persons and entities who purchased the common stock of Michaels Stores during the period from February 1, 1995 through August 24, 1995 and who were damaged thereby." For the reasons stated herein, the motion is granted.

## I.

### BACKGROUND

Michaels Stores in a nationwide specialty retailer of arts, crafts and decorative items. The company has 466 stores in 41 states, Puerto Rico and Canada. Over 21 million shares of common stock have been issued by Michaels. These shares are owned by thousands of stockholders throughout the country and publicly traded on the NASDAQ market.

Plaintiffs purchased common stock in Michaels Stores between February 1, 1995 and August 23, 1995.[2] The stock price dropped $7.50 per share on May 23–24, 1995 and $5.50 per share on August 23–24, 1995. Plaintiffs contend that the second drop came after a public announcement that Michaels had decided to reverse its business strategy and focus on investment return rather than sales growth. Prior to that time, the company had touted a plan that emphasized expansion and increased sales through acquisitions, new store openings, and a diversified inventory. These statements were contained in SEC filings, reports and press releases. Plaintiffs allege that Michaels and its directors intentionally disseminated false and misleading information in order to artificially inflate stock prices. According to plaintiffs, the company misled investors about the reasons

for its poor financial performance in the second quarter of 1995. Michaels represented that the projected decrease in net income was due to "increased promotional sales activity undertaken partly in response to a general softness in the retail sector." COMPLAINT ¶ 63. The company attempted to reassure the market that it would continue to grow by announcing plans to acquire additional stores and offer new product lines. However, plaintiffs contend that the true reason for the drop in second quarter earnings was "a major change in the amount and product mix of inventory." COMPLAINT ¶ 64. Simply stated, Michaels had too many stores and could not sell its existing merchandise. Plaintiffs allege that the defendants concealed this information from the public until August 23, 1995. The price of Michaels stock dropped 21% after the company announced plans to reduce its product assortment by 7,000 items and focus primarily on economic value-added rather than sales.

Plaintiffs filed a class action complaint five days after the stock prices dropped. They allege violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b–5. 15 U.S.C. §§ 78j(b) & 78t(a); 17 C.F.R. § 240.10b–5. Defendants filed a motion to dismiss under Rule 12(b)(6). The motion was granted in part and denied in part on June 18, 1996.[3] Defendants now oppose class certification because the proposed class representatives do not meet the typicality or adequacy requirements of Rule 23(a). The legal issues have been fully briefed by the parties and this matter is ripe for determination.[4]

---

1. Plaintiff Steven Kalodner withdrew his request to proceed as a class representative after the defendants pointed out that he did not purchase any common stock in Michaels Stores during the class period.

2. Avrimin Kogan purchased 37,000 shares of stock between February 1, 1995 and May 24, 1995. He exercised his option to buy 20,000 additional shares on August 18, 1995. Kogan also sold 32,000 of his shares after May 24, 1995 but before the end of the class period. Richard Manson, Simon Sinnreich and Solomon Chazan purchased their stock after the price dropped on May 24, 1995. Manson bought 200 shares on June 13, 1995. Sinnreich purchased 1,000 shares on May 24, 1995. Chazan bought 1,000 shares on May 26, 1995.

3. The motion was granted as to those claims based on allegedly fraudulent statements made by third-parties and any claims that require proof of scienter on the part of R. Don Morris and Jack Bush. The motion to dismiss was denied in all other respects. *See* MEMORANDUM ORDER, 6/18/96 at 3.

4. The district court is required to conduct a class certification hearing when there is "any doubt" about the issues in dispute. *See Morrison v. Booth*, 730 F.2d 642, 643 (11th Cir.1984). A hearing was held on February 7, 1997 but no new evidence was presented. The motion for class certification must therefore be determined on the pleadings, affidavits and deposition testimony previously submitted by the parties.

204

## II.

### APPLICABLE LAW

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 23. Plaintiffs must first define the class with specificity and show that they are members of the class. *Forbush v. J.C. Penney Company, Inc.*, 994 F.2d 1101, 1105 (5th Cir.1993). They must then establish all four elements of Rule 23(a). *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir.1987). These requirements are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). The proposed class must also satisfy at least one of the elements of Rule 23(b). *Shivangi*, 825 F.2d at 891. Here, plaintiffs allege that "[c]ommon questions of law and fact exist as to all members of the class and predominate over any questions affecting solely individual members of the class." *See* FED. R. CIV. P. 23(b)(3). The trial court must conduct a "rigorous analysis" to ensure that these prerequisites are met. *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996), *citing General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

Rule 23 is remedial and should be liberally construed to permit class actions. *Longden v. Sunderman*, 123 F.R.D. 547, 550 (N.D.Tex. 1988). *See also Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). This is especially true in securities fraud cases because the number of potential class members is usually large while the individual claims of many of the members are small. *Green v. Wolf Corporation*, 406 F.2d 291, 295–97 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Class actions can also be an effective device to deter illegal activity in the marketplace.

*Longden*, 123 F.R.D. at 551. In doubtful cases, judges should exercise their discretion in favor of certification. *Horton v. Goose Creek Independent School District*, 690 F.2d 470, 487 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

## III.

### DISCUSSION

Defendants concede that the proposed class meets the numerosity and commonality requirements of Rule 23(a). They also tacitly acknowledge that common questions of law and fact predominate over questions affecting individual class members.[5] Nevertheless, defendants oppose class certification because: (1) the claims and defenses of the representative parties are not typical of the claims and defenses of the class; and (2) some of the plaintiffs and their attorneys cannot fairly and adequately protect the interests of the class.

### A. Typicality

Defendants contend that all five plaintiffs are subject to "unique defenses" which disqualify them from serving as class representatives. Succinctly stated, defendants argue that some or all of the plaintiffs: (1) are sophisticated investors; (2) have filed similar lawsuits on a number of occasions; (3) have a potential conflict of interest with other class members; (4) still own stock in the company; and (5) had access to information not available to the general public.

#### 1. Ride 23(a)(3)

■ The claims or defenses of representative parties must be typical of the claims or defenses of the class. FED. R. CIV. P. 23(a)(3). However, the claims need not be identical. *Phillips v. Joint Legislative Committee on Performance and Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982). Courts routinely find that similar legal theories satisfy this requirement even where significant factual dis-

---

5. Defendants contest the ability of plaintiffs to satisfy the requirements of Rule 23(b)(3) only "to the extent that trial would focus upon the named representatives' unique circumstances instead of class issues." RESPONSE at 7 n. 3.

tinctions are present. *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985), *citing De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983).

■■ The typicality requirement protects class members from representation by a party who is "preoccupied with a defense which is applicable only to himself." *Warren v. Reserve Fund. Inc.*, 728 F.2d 741, 747 (5th Cir.1984). Thus, class certification is inappropriate where a putative representative is subject to unique defenses which threaten to become the focus of the litigation. *See Gary Plastic Packaging Corp. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991).

### 2. *Sophisticated Investor*

■ Defendants argue that Richard Manson, Simon Sinnreich and Avrimin Kogan cannot serve as class representatives because their "broad and diverse investment history" subject them to a variety of unique defenses. These include: (1) whether they exercised due diligence; (2) whether they relied on publicly available information; and (3) whether their reliance on public information was reasonable given their background and experience. Defendants suggest that these issues will dominate the litigation and detract from the ability of plaintiffs to represent a class of ordinary shareholders.

There is little doubt that Manson, Sinnreich and Kogan are "sophisticated investors." · Manson is a senior vice-president at Prudential Securities and has been a stockbroker for 25 years. He has over 2,000 clients and trades on his own account. Manson has been trained in "efficient market theory" and teaches other brokers about markets and trading. He devotes approximately 10% of his time to his own investments and has made over $1 million in investment income over the past five years. Sinnreich and Kogan also have significant financial expertise. Sinnreich is the retired chairman and CEO of a ·major corporation. He handles his own finances and spends a substantial amount of time planning and monitoring his investments. Kogan is very active in the stock market. He does not use a broker but rather gathers and evaluates information on his own. Defendants argue that the unique characteristics of these plaintiffs make them inappropriate class representatives in a securities fraud case.

■ In order to properly address this argument, the Court must first analyze the elements of a claim under Section 10(b) of the Securities and Exchange Act and Rule 10b–5. These elements are: (1) a misstatement or omission, (2) of material fact, (3) made with scienter, (4) on which the plaintiffs relied, (5) that proximately caused damage to plaintiffs. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520–21 (5th Cir.1993). Historically, the element of reliance has been an obstacle to class certification. The Fifth Circuit adhered to a subjective standard of "reasonable reliance" which required proof of due diligence on the part of each class member. Reliance was thus a matter of individual proof which generally precluded securities fraud cases from proceeding as class actions.

■ The "fraud-on-the-market" doctrine has altered the traditional approach to this issue. There is now a rebuttable presumption in Rule 10b–5 cases that the investor indirectly relied on the alleged misstatement by relying on the integrity of the stock price established by the market. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 506 (9th Cir. 1992). This presumption applies equally to "a professional investor, the class members as amateurs, and indeed, those who choose stock by means of a ouija board or by throwing darts at the list." *Kolin v. American Plan Corp.*, FED. SEC. L. REP. (CCH) ¶ 92,-728, 1986 WL 36311 (E.D.N.Y.1986). Plaintiffs have sufficiently alleged "fraud-on-the-market" in their complaint. COMPLAINT ¶¶ 30–32. Thus, reliance can be presumed at the class certification stage. *See Basic Inc. v. Levinson*, 485 U.S. 224, 249–50, 108 S.Ct. 978, 992–93, 99 L.Ed.2d 194 (1988); *Abell v. Potomac Insurance Co.*, 858 F.2d 1104, 1120 (5th Cir.1988), *vacated on other grounds*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584

(1989).[6]

Numerous courts in this district and others have certified sophisticated investors as class representatives in securities fraud cases. *Lasker v. Stevens Graphics Corp.*, No. 3–90–CV–2766–G, op. at 8–10 (N.D.Tex., March 1, 1992) (Fish, J.); *In re First RepublicBank Securities Litigation*, FED. SEC. L. REP. (CCH) ¶ 94,554, 1989 WL 108795 (N.D.Tex. 1989) (Sanders, J.); *Gibb v. Delta Drilling Co.*, 104 F.R.D. 59, 78 (N.D.Tex.1984) (Fish, J.). *See also Rubenstein v. Collins*, 162 F.R.D. 534, 537–38 (S.D.Tex.1995); *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 101 (M.D.N.C.1993); *In re Revco Securities Litigation*, 142 F.R.D. 659, 668 (N.D.Ohio 1992); *Modell v. Eliot Savings Bank*, 139 F.R.D. 17, 22 (D.Mass.1991); *In re MDC Holdings Securities Litigation*, 754 F.Supp. 785, 802 (S.D.Cal.1990). Indeed, all of the cases cited by defendants pre-date the adoption of the "fraud-on-the-market" theory in *Basic*. *Warren*, 728 F.2d at 747; *J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 998 (7th Cir.1980); *Garonzik v. Shearson Hayden Stone, Inc.*, 574 F.2d 1220, 1221 (5th Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 39 (1979); *Weintraub v. Texasgulf Inc.*, 564 F.Supp. 1466, 1471 (S.D.N.Y.1983).[7] The Court is not convinced that the claims of Manson, Sinnreich and Kogan are "atypical" of less sophisticated class members. It is likely that defendants will attempt to rebut the "fraud-on-the-market" presumption at trial and argue that none of the shareholders actually relied on the stock price as established by the market. This makes the issue typical as to all class members.

**6.** Defendants may rebut this presumption at trial. This can be done by showing that the alleged misrepresentation did not lead to a distortion of the stock price or that an individual plaintiff traded or would have traded despite his knowledge that the statement was false. Any evidence that severs the link between: (1) the alleged misrepresentation, and either (2) the price paid or received for the stock, or (3) the decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance. *See Basic*, 485 U.S. at 247, 108 S.Ct. at 992.

**7.** Defendants suggest that "certain Northern District of Texas cases have refused to give weight to the fact of an investor's sophistication" and thus

### 3. *Professional Plaintiff*

■ Defendants also characterize Richard Manson as a "professional plaintiff" who routinely files suit whenever the price of one of his stocks drops. Manson has filed 18 class actions in the past five years. Eight of those cases have been brought under the federal securities laws. Defendants maintain that this history of litigious conduct disqualifies Manson from serving as a class representative.

■ A "professional plaintiff" is someone who regularly buys stock in different companies in order to sue them later. C. Cutting, *Turning Point for Rule 10b–5: Will Congressional Reforms Protect Small Corporations*, 56 OHIO ST. L.J. 555, 576 (1995). His true motivation is to reap the financial rewards of future litigation rather than seek a return on a legitimate investment. A class representative motivated by these considerations is subject to a unique defense because he did not rely on the integrity of the market in purchasing his stock. *Hanon*, 976 F.2d at 508; *Shields v. Smith*, FED. SEC. L. REP. (CCH) ¶ 96,449, 1991 WL 319032 (N.D.Cal. 1991). Consequently, he fails the typicality requirement. *Hanon*, 976 F.2d at 508.

It is often difficult to determine a person's true motivation in entering into a stock transaction. Courts therefore rely on more visible characteristics to identify a "professional plaintiff." He usually has extensive experience in securities fraud litigation. *See Hanon*, 976 F.2d at 506–07 (plaintiff previously filed four other derivative suits); *In re Gibson Greetings Securities Litigation*, 159 F.R.D. 499, 501 (S.D.Ohio 1994) (plaintiff filed 182 class actions in past twelve years).

"fail to follow contrary Fifth Circuit authority." RESPONSE at 9–10 n. 4. This assertion ignores the procedural history of *Warren* and *Garonzik*. The trial court denied class certification in those cases because of the unique characteristics of the proposed representatives. This ruling was affirmed on appeal. Significantly, the appellate court did not hold that "sophisticated investors" could *never* represent a class of stockholders. *See Garonzik*, 574 F.2d at 1221 (no per se rule against sophisticated investors serving as class representatives). The Fifth Circuit merely upheld the trial court's discretion in class certification matters.

The same lawyer represents him in case after case. *See Hanon,* 976 F.2d at 506–07. The "professional plaintiff" typically owns a small number of shares in several companies. *See Hanon,* 976 F.2d at 506–07 (plaintiff owned ten shares of stock in eight different high technology companies). He spreads his investment over several stocks to maximize the opportunity to sue whenever stock prices fall. *See* Note, *Predatory Attorneys and Professional Plaintiffs: Reforms Needed to Limit Vexatious Securities Litigation,* 23 HOFSTRA L. REV. 655, 666 (1995).

Manson does have a propensity for litigation. He has filed a total of 18 class actions over the past five years using the same lawyers. Eight of those cases were brought under the federal securities laws. Manson also owns about 200 different stocks. He routinely calls his attorney when there are "sharp drops in the price of a stock on the release of information." These facts, standing alone, seem to fit the profile of a "professional plaintiff." However, Manson has been remarkably successful in his other class actions. Four of the eight securities fraud cases have settled for a total in excess of $40 million. Manson has been certified as a class representative eight times. He has never been denied class certification.[8]

Moreover, Manson has earned over $1 million in investment income over the past five years. This shows that he is a serious, active investor in the capital markets. Manson purchased 200 shares of Michaels stock at a cost of $4,800. This is a substantial financial commitment far greater than the nominal amount usually invested by a "professional plaintiff." *Cf. Hanon,* 976 F.2d at 506–07 (plaintiff owned ten shares of stock).

The evidence fails to establish that Manson's sole motivation in purchasing Michaels stock was to pursue litigation against the company. The fact that he has been involved in similar class actions as a named plaintiff does not necessarily subject him to unique defenses. To the contrary, it tends to support his assertion that he will vigorously pursue the interests of the class. *See Lasker,* No. 3–90–CV–2766–G, op. at 11; *Katz v. Comdisco, Inc.,* 117 F.R.D. 403, 410 (N.D.Ill. 1987). The Court declines to hold that this involvement bars Manson from acting as a class representative in this case.[9]

### 4. Conflict with Pre–May Purchasers

■ The price of Michaels stock fell $7.50 per share on May 23–24, 1995 after the company announced poor second quarter results. Richard Manson, Simon Sinnreich and Solomon Chazan purchased their stock shortly after this drop.[10] The stock fell another $5.50 per share on August 23–24, 1995. Defendants argue that this creates a potential conflict of interest within the class. Succinctly stated, defendants contend that the pre-May purchasers have an incentive to stress the significance of the first price drop. They would likely argue that this drop "cured" the fraudulently induced price inflation allegedly caused by misleading statements about the financial condition of the company. The post-May purchasers, on the other hand, have very different interests. They would want to minimize the effect of pre-may disclosures and focus attention on the reasons for the second price drop.

■ This potential conflict is relevant to the issue of damages. The traditional measure of damages in a securities fraud action is the "out-of-pocket" rule. *Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch Pierce*

---

8. Manson voluntarily withdrew as a class representative in a securities fraud case brought against Bristol–Meyers in June 1992.

9. Manson may well be disqualified from serving as a class representative under the Private Securities Litigation Reform Act of 1995. PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, Pub.L. 104–67, 109 Stat. 737 (1995). This recently enacted statute provides that "a person may be a lead plaintiff ... in no more than five securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure

during any three year period." 15 U.S.C. § 77z–1(a)(3)(B)(vi). However, this legislation does not apply to private actions commenced before December 22, 1995. This lawsuit was filed on August 28, 1995 and is not subject to the Act.

10. Avrimin Kogan bought his stock prior to May 24.1995. However, defendants contend that Kogan cannot represent the pre-May purchasers because he "plainly aligned himself with the interests of the post-drop purchasers." LETTER, 2/21/97 at 3.

*Fenner & Smith, Inc.*, 785 F.2d 1274, 1278 (5th Cir.1986); *Hanley v. First Investors Corp.*, 793 F.Supp. 719, 723 (E.D.Tex.1992). Damages are determined by calculating the difference between price inflation at the time of purchase and price inflation at the time of sale. *Blackie*, 524 F.2d at 908–09; *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 483 (W.D.Mich. 1994). In order to maximize their recovery, the pre-May purchasers need to show that stock prices were no longer inflated after May 24, 1995. However, the post-May purchasers must demonstrate that price inflation remained high until the drop on August 23, 1995.

██ The Court is not convinced that this potential conflict disqualifies the plaintiffs as class representatives. A conflict on damages does not preclude class certification unless it is imminent and "at the very heart of the suit." *Blackie*, 524 F.2d at 909–10. *See also Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 624–25 (S.D.N.Y.1973) (certifying class despite potential conflict on damages). Here, any conflict is substantially outweighed by the common interests of the class members. Plaintiffs have alleged that the defendants made misstatements and material omissions at different times throughout the class period. Every class member has an interest in establishing the existence and materiality of these misrepresentations. *See Blackie*, 524 F.2d at 909–10; *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 612 (W.D.Pa. 1983). Moreover, it is not clear whether plaintiffs and the pre-may purchasers will disagree over the amount of fraud-induced inflation affecting the price of stock between May 24, 1995 and August 23, 1995. Stock inflation price can only be calculated by sophisticated financial analysis which has yet to be done. There is no evidence at this stage of the litigation to suggest any serious differences over this objective calculation. *See In re LTV Securities Litigation*, 88 F.R.D. 134, 152 (N.D.Tex.1980) (danger was remote that class representative could influence calculation of price inflation to the detriment of

some class members). The hypothetical conflict between early and late purchasers does not destroy typicality.[11]

### 5. *Equity Conflict*

██ Defendants argue that Solomon Chazan cannot represent the class because he still owns 1,000 shares of Michaels stock. They claim that Chazan does not want a high verdict or settlement that will substantially affect the stock price. Rather, defendants suspect that his goal is to "minimize the total claims against [the company] while maximizing his own potential benefit from [an adverse] judgment." RESPONSE at 24.

This argument is founded on a doubtful assumption that has consistently been rejected by the courts. *See, e.g. In re Tricord Systems, Inc. Securities Litigation*, No. 3–94–746, op. at 15 (D. Minn., April 5, 1996); *Ziemack v. Centel Corp.*, 164 F.R.D. 477, 480–81 (N.D.Ill.1995); *Gibb*, 104 F.R.D. at 79–80. An investor's stock holdings would have to be massive in order to allow his personal interest in any recovery to be outweighed by his equity interest in the company. *See Herbst v. International Telephone & Telegraph Corp.*, 495 F.2d 1308, 1314–15 (2d Cir.1974); *In re Consumers Power Co. Securities Litigation*, 105 F.R.D. 583, 604 (E.D.Mich.1985). Indeed, a later opinion in one of the cases cited by defendants refused to deny class certification on this basis. *In re Seagate Technology II Securities Litigation*, 156 F.R.D. 229, 231 (N.D.Cal.1994). The Court finds no significant conflict of interest.

### 6. *Access to Inside Information*

██ Defendants maintain that Avrimin Kogan had "personal access" to financial information about Michaels Stores before he bought stock in the company. Kogan admits that he called the investor relations department "four or five" times prior to his initial stock purchase on February 24, 1995. He spoke with a company representative before

---

11. Some district courts have decided the issue differently. *See O'Neil v. Appel*, 165 F.R.D. 479, 494–95 (W.D.Mich.1996) (denying class certification because of a conflict between some members who purchased stock and others who sold stock during the same time period); *Ballan*, 159 F.R.D. at 483–84 (recognizing that "the interests of purchasers and sellers in any given subclass period will always be exactly opposite").

selling 10,500 shares on June 28, 1995 and "quite possibly" contacted investor relations again just prior to the announcement on August 23, 1995. Kogan states that he was misled about inventory problems at the stores during these private conversations and relied on these misrepresentations in making his investment decisions.

 Reliance on public information is an essential element of a securities fraud claim. *See Basic*, 485 U.S. at 241, 108 S.Ct. at 989. A plaintiff who relies on non-public information is subject to a unique defense and cannot serve as a class representative. *See Zandman v. Joseph*, 102 F.R.D. 924, 931 (N.D.Ind. 1984). However, there is no evidence that the representations made to Kogan in his private communications with the investor relations department were any different from those contained in public documents.[12] All of the plaintiffs in this case are entitled to a presumption that they purchased Michaels stock in reliance on market information. *Basic*, 485 U.S. at 247, 108 S.Ct. at 992. Defendants can rebut this presumption by showing that Kogan actually relied on information that was not disclosed to the market. *See Fine v. American Solar King Corp.*, 919 F.2d 290, 298–99 (5th Cir.1990), *cert. dism'd*, 502 U.S. 976, 112 S.Ct. 576, 116 L.Ed.2d 601 (1991). However, they have failed to do so. The Court concludes that Kogan meets the typicality requirement. *See Grainger v. State Security Life Insurance Co.*, 547 F.2d 303, 307 (5th Cir.1977), *cert. denied*, 436 U.S. 932, 98 S.Ct. 2832, 56 L.Ed.2d 777 (1978) (reliance on oral statements does not preclude class certification unless there are "material variations in the alleged misrepresentations").

### B. *Adequacy*

Defendants contend that some of the named plaintiffs and their lawyers cannot adequately represent the interests of the class. They allege that: (1) Richard Manson and Solomon Chazan are totally unfamiliar with the litigation; (2) Simon Sinnreich and Avrimin Kogan have profound credibility problems; and (3) the attorneys for the class have selected deficient representatives.

### 1. *Rule 23(a)(4)*

 The representative parties must "fairly and adequately" represent the interests of the class. FED. R. CIV. P. 23(a)(4). This requirement is founded on due process considerations because of the binding effect of class actions on absent class members. *See Twyman v. Rockville Housing Authority*, 99 F.R.D. 314, 322 (D.Md.1983), *citing Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The primary elements of adequate representation are: (1) the ability to vigorously prosecute class claims; and (2) an absence of conflict or antagonism between the interests of the named plaintiffs and the interests of the class. *Longden*, 123 F.R.D. at 557; *Gibb*, 104 F.R.D. at 75. This factual determination depends on the circumstances of each case. *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981); *Gibb*, 104 F.R.D. at 75.

### 2. *Familiarity With Case*

 Defendants attack Richard Manson and Solomon Chazan as class representatives because of their "startling unfamiliarity" with the case. Neither Manson nor Chazan had extensive discussions with their lawyers before this suit was filed. Subsequent communications with counsel have been sporadic and brief. Both plaintiffs rely heavily on their attorneys to conduct the litigation. Chazan did not know whether the original complaint had been amended or why a defendant was later dropped from the lawsuit. He was under the mistaken impression that the motion to dismiss had been denied in its entirety and did not know when the case was set for trial.

 A class representative must have a "general understanding of their position as plaintiffs with respect to the cause of action and the alleged wrongdoing perpetrated against them by the defendants." *Rubenstein*, 162 F.R.D. at 538. Both plaintiffs meet this minimal requirement. Chazan testified that the case involves "a number of

---

12. Kogan stressed that he relied on a variety of factors in deciding to buy Michaels stock, including reports prepared by the company and the market.

people [who] bought shares [of Michaels stock] based on certain information until such time when it was shown that the information was totally incorrect or false." Manson was able to articulate his claims against the defendants including the "fraud-on-the-market" theory. These plaintiffs knew when the complaint was filed and have followed the litigation through their attorneys. Other courts have found class representatives to be adequate under similar circumstances. *See, e.g. Rubenstein*, 162 F.R.D. at 538–39 (plaintiff had general knowledge of nature of litigation); *Longden*, 123 F.R.D. at 557–58 (plaintiffs did not know exact misrepresentations made by defendants but still had sufficient understanding of their claims); *Gibb*, 104 F.R.D. at 77 (plaintiff was adequate representative though not readily available to be deposed). *But cf. In re Commonwealth Oil/Tesoro Petroleum Securities Litigation*, 484 F.Supp. 253, 263 (W.D.Tex.1979) (plaintiffs were inadequate class representatives because they did not appear for deposition, were unaware of nature of case, and would not pay costs of litigation). The Court finds that Manson and Chazan can adequately represent the interests of the class.

### 3. *Credibility Problems*

■ Defendants suggest that Simon Sinnreich and Solomon Chazan have "profound credibility problems." Their criticism of Sinnreich stems from his involvement in another securities fraud case. Sinnreich was the chairman and CEO of Pure Tech International. His company was sued by a group of disgruntled shareholders after stock prices fell in 1993. The shareholders were represented by Joseph Weiss—co-counsel for plaintiffs in this case. Sinnreich believed that the securities fraud action was groundless but settled to avoid protracted litigation. He explained that this experience drove him to an early retirement because of stress and resulting health concerns.

Defendants challenge Chazan because of inconsistencies in his deposition testimony.

Chazan was questioned first by defense counsel. He testified that he never saw the original complaint before it was filed. Chazan also said that he would need "approval" from his partners and associates before he could attend a two or three week trial. Plaintiffs' counsel asked the same questions on cross-examination. Chazan retracted his prior testimony and said that he had reviewed the original complaint before it was filed. He also said that he did not need anyone's permission to attend trial but "would like to be told in advance." Defendants maintain that Sinnreich and Chazan are not adequate class representative because of these "credibility problems."[13]

This argument is weak if not frivolous. There is no doubt that honesty and integrity are important traits for class representatives. *See Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D.Ill.1990); *Gibb*, 104 F.R.D. at 76. However, nothing in the record demonstrates that Sinnreich or Chazan are dishonest. Sinnreich was involved in a prior securities fraud case and settled the litigation for more than he thought it was worth. He is now represented by the same lawyer who sued his company. These facts do not impact his credibility. Indeed, it is doubtful they are even admissible at trial. Nor do the minor discrepancies in Chazan's deposition testimony impugn his veracity. Defendants have identified two inconsistent statements in a deposition that covered 157 pages and lasted more than four hours. None of the contradictions are so widespread or egregious as to suggest a deliberate attempt to mislead. *Cf. Kaplan*, 132 F.R.D. at 510 (decertifying a class representative whose deposition testimony reflected a "deliberate attempt to conceal information"). Rather, the inconsistencies relate to minor details of no consequence to the issues in this case. *See Gibb*, 104 F.R.D. at 76 (discrepancy on irrelevant issue does not render class representative inadequate). *Cf. Panzirer v. Wolf*, 663 F.2d 365, 368 (2d Cir.1981), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982) (plain-

---

**13.** Defendants point to a third contradiction in Chazan's deposition testimony. They state that Chazan first testified that he did not know the original complaint was a class action, but later said that he authorized class allegations in the original complaint. This is inaccurate. Chazan never claimed that he authorized class allegations in the original complaint. Rather, he said that he authorized counsel to file the *consolidated amended* complaint as a class action.

tiff was inadequate because she gave contradictory testimony on key facts); *Cohen v. Laiti,* 98 F.R.D. 581, 582–83 (E.D.N.Y.1983) (class representative was inadequate because of his incredible statements about key issue of reliance). Sinnreich and Chazan are not disqualified as class representatives on this basis.

### 4. *Class Counsel*

 Finally, defendants urge that class certification should be denied because the attorneys have selected deficient class representatives. This argument is based on the premise that the named plaintiffs are atypical and inadequate. The Court has held otherwise. Defendants do not challenge the qualifications of class counsel on any other grounds. Adequacy is therefore presumed. *See Ballan,* 159 F.R.D. at 488, *citing* CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 7A FEDERAL PRACTICE AND PROCEDURE § 1765 (2d ed.1986).[14]

### IV.

### CONCLUSION

Plaintiffs have established the requirements of Rules 23(a) & (b)(3). Their motion for class certification is therefore granted. The class consists of "all persons and entities who purchased the common stock of Michaels Stores during the period from February 1, 1995 through August 24, 1995 and who were damaged thereby." Excluded from the class are: (1) the individual defendants; (2) members of their immediate family; (3) directors, officers, subsidiaries and affiliates of Michaels Stores; (4) any entity in which an excluded person or entity has a controlling interest; and (5) the legal representatives, heirs, successors or assigns of any excluded person or entity.

Counsel for all parties are directed to confer in an attempt to reach agreement on a proposed notice to all class members. The notice shall comply with the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 23(c)(2). The

proposed notice shall be submitted to the Court within thirty days from the date of this order. Each party may submit their own version if agreement cannot be reached.

**SO ORDERED.**

---

14. The Court notes that lead counsel Terrell W. Oxford and the other attorneys who represent plaintiffs have been certified as class counsel in numerous securities fraud cases throughout the country. Their qualifications, experience, and ability to conduct this litigation are beyond reproach.